UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FLEXTRONICS INTERNATIONAL, LTD.,

                                    Petitioner,

                    -v-

ALLIANZ GLOBAL CORPORATE & SPECIALTY SE,

                                    Respondent.

---

25 Civ. 1511 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Flextronics International, Ltd. ("Flex") petitions here to confirm an approximately $11 million arbitral award against respondent Allianz Global Corporate & Specialty SE ("Allianz"). Dkts. 1, 18.  The award reflects the sum the arbitral panel determined Allianz owes Flex under a directors-and-officers insurance policy, as reimbursement for costs Flex incurred defending and settling a civil lawsuit.  Dkt. 17-1 ("Award") at 1–2, 21.  Allianz cross-moves to vacate the award.  Dkts. 16, 20–21.  For the following reasons, the Court grants Flex's motion to confirm the award, and denies Allianz's cross-motion to vacate it.

## I.    Background

### A.    The Parties

Flex is an international supply chain and manufacturing company headquartered in Singapore, with its administrative headquarters in San Jose, California.  Dkt. 20-3 at 3.

Allianz is a multinational financial services company headquartered in Munich, Germany.  *Id.*

### B.    Flex's Directors-and-Officers Insurance Policies

Beginning in approximately April 2016, Flex maintained a $130 million tower of insurance policies for directors-and-officers ("D&O") liability.  Award at 1–2; Dkt. 40-2 at 1–2. AXA XL Insurance Company S.E. ("XL") issued the $15 million primary layer of the tower. Award at 1–2.  AIG Europe Limited ("AIG") was the first excess insurer; Chubb Insurance Company of Europe SE ("Chubb") the second; and Allianz the third.  *Id.*  Each excess policy carried a $15 million limit.  *Id.*

The excess policies, including Allianz's, tracked the language of the primary policy (the "policy") in all material respects.  *Id.*  Important here, section 5.10 of the policy addressed how to allocate loss between Flex and its insurers, in the event that loss resulted from a mix of covered and uncovered claims and/or entities:

> The insurer shall be liable only for defen[s]e costs or loss derived exclusively from a covered claim against an insured person or a covered securities claim against a company.  If either:
>
> > (i)    a claim (other than a securities claim) is made jointly against:
> >
> > > (a)    any insured person; and
> > >
> > > (b)    any company or any other person or entity; or
> >
> > (ii)    a claim involves both covered and uncovered matters or persons under this policy,
>
> *then the insured and the insurer shall use their best efforts to determine a fair and proper allocation of loss covered under this policy.*

*Id.* at 6–7 (emphasis added).

Under section 5.19, New York law governed any disputes arising from a potential breach of the agreement.  *Id.* at 5.  However, section 3.42(iii) provided that, as to the "insurability of damages," "any applicable law" favoring the insured on that issue would apply.  *Id.* at 6.  Under

this provision, if Flex obtained a written legal opinion favorably applying another jurisdiction's law, the insurers could not challenge that determination. *Id.* Thus, even if certain claims were not insurable under New York law—such as those involving damages for unjust enrichment or intentional misconduct—this provision gave Flex an opportunity to assert coverage under the more permissive law of another jurisdiction.

### C.    The ATI Action Against Flex

On January 17, 2017, Array Technologies, Inc. ("ATI") filed a lawsuit (the "ATI action") against NEXTracker, Inc. ("NEXT"), which was a Flex subsidiary at the time, and two NEXT officers in federal district court in New Mexico. Dkt. 36-3 ("Hr'g Tr.") at 7; *Array Techs., Inc. v. Mitchell*, No. 17 Civ. 87, Dkt. 1 (D.N.M. Jan. 17, 2017) ("*ATI v. Mitchell*").[1]  The lawsuit stemmed from a NEXT officer, Colin Mitchell, having left ATI to work for NEXT, an ATI competitor. Hr'g Tr. at 25.

On August 30, 2017, ATI filed an amended complaint that named four individuals—Mitchell, Daniel Shugar (NEXT's CEO), Marco Garcia (NEXT's CCO), and Scott Graybeal (former Flex SVP)—and two entities—NEXT and Flex—as defendants. *Id.* at 7, 9–10; *ATI v. Mitchell*, Dkt. 52 at 1.  Flex's D&O insurance policies, including with Allianz, covered the four individuals, but not the two corporate defendants. *See* Award at 4.

In brief, ATI alleged that the defendants had aided and abetted, and conspired with Mitchell to breach his noncompete and nondisclosure agreements with ATI, and to misappropriate ATI's trade secrets. Hr'g Tr. at 25, 30; *ATI v. Mitchell*, Dkt. 52 at 18–22.  After

---

[1] The Court takes judicial notice of procedural details in *ATI v. Mitchell* not found in the parties' declarations or admissible exhibits. *See Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (citation omitted)).

extensive motion practice, the claims that remained for trial were: (1) breach of contract against Mitchell; (2) breach of the covenant of good faith and fair dealing against Mitchell; (3) trade secret misappropriation against all defendants; (4) breaches of fiduciary duties against all defendants; (5) tortious interference with contract against all defendant except Mitchell; and (6) unjust enrichment against all defendants except Mitchell.  *Id.* at 30–33; Dkt. 20-23 at 9–10.

Important here, ATI alleged that the amount of damages resulting from each claim was the same.  Hr'g Tr. at 43.  It sought to calculate such damages based on its lost profits or, alternatively, NEXT's profits from the alleged misconduct.  *Id.* at 33–34.  ATI asserted that all defendants were jointly and severally liable for the entire amount.  *Id.* at 43.  In July 2022, on the eve of trial, the parties settled for $42,750,000 in payment from the corporate defendants and NEXT's public acknowledgment of wrongdoing.  *Id.* at 158; Award at 12.

### D.    Interactions Between Flex and Its Insurers Before the Arbitration

In approximately August 2018, Flex notified its insurers, including Allianz, of the ATI action.  Hr'g Tr. at 164.  As the ATI litigation unfolded—delayed by the pandemic—Flex regularly shared case updates with the insurers, transmitted pleadings and expert reports to them, and gave them privileged assessments of Flex's liability.  *See, e.g.*, *id.* at 76–77, 83–96, 134–37.

XL, the primary insurer, settled with Flex first, while the ATI action was pending.  *Id.* at 168–69.[2]  Under that settlement, XL covered approximately 80% of Flex's defense costs insured under the $15 million primary policy.  Flex covered the remaining approximately 20%.  *Id.*

On March 20, 2020, in advance of a mediation with ATI, Flex made its first settlement offer to the three excess insurers, including Allianz.  Under it, the excess insurers would have similarly paid 80% of a potential settlement.  *See, e.g.*, *id.* at 166–70; Dkt. 36-8 at 13.  In later

---

[2] The record does not reflect precisely when Flex and XL settled.

settlement offers to certain insurers, Flex maintained that "virtually 100 percent of any loss [was] covered," and that its offers below a 100% allocation were aimed at "expedit[ing] resolution." Dkt. 17-8 (September 24, 2020 letter) at 11; *see also* Hr'g Tr. at 186–88; Dkt. 17-10 at 4 (February 6, 2022 letter from Flex's counsel to representatives of AIG and Chubb, proposing a settlement allocating 75% of Flex's loss to those insurers and stating: "Flex is not agreeing that this is the appropriate [allocation] methodology, [but] we will use it here for illustrative purposes").

On July 13, 2022, Flex informed the excess insurers, including Allianz, that a settlement conference in *ATI v. Mitchell* was scheduled for July 15, 2022.  Hr'g Tr. at 145–46.  The ATI action settled soon after.  *Id.* at 157.  Flex made another proposal to AIG and Chubb, in which each would cover 65% of its layer and Flex would cover 35%.  *Id.* at 171; Dkt. 17-11 (July 19, 2022 email) at 1.  That offer was not accepted.  *See* Award at 12.

### E.    The Arbitration

On March 17, 2023, after further negotiations failed, Flex initiated an arbitration against AIG, Chubb, and Allianz to recover its losses from defending and settling the ATI action, exclusive of the $15 million primary layer and $250,000 retention expenses for which Flex was responsible under that policy.  Award at 1, 4; Dkt. 17-2 ("Hr'g Tr. Cont.") at 12–13.  The arbitration was administered under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), effective September 1, 2022.  Award at 2.  Pursuant to those rules, on May 16, 2023, after a strike-and-rank process, the International Centre for Dispute Resolution ("ICDR"), an AAA division, appointed William H. Levit, Jr., Neal M. Eiseman, and Joseph M. Matthews as arbitrators (collectively, the "panel").  Dkts. 40-5 (May 16, 2023 letter) at 1, 40-7 (April 18, 2023 letter) at 1–2.

On July 7, 2023, Flex served its amended statement of claim.  Award at 2.  On August 4, 2023, Allianz served its response and detailed statement of defenses.  *Id.*  The panel thereafter rendered pretrial rulings.  These included (1) denying Allianz's request for leave to file a dispositive motion on its lack-of-consent defense; (2) holding, under section 3.42 of the policy, that Delaware law controlled whether intentional conduct, unjust enrichment, and punitive damages were insurable losses; (3) denying the insurers' motion for a ruling that Flex lacked standing to assert claims under the policy and thus could not establish insurable loss; and (4) denying Allianz's request to file a dispositive motion on allocation issues, citing genuine issues of material fact regarding "whether Flex engaged in 'best efforts' negotiations to reach a 'fair and proper allocation,'" and "whether Flex had admitted that a 'fair and proper allocation' would not reach Allianz's layer" of coverage in the insurance tower.  *Id.* at 3.[3]

On July 2, 2024, the panel was notified that Flex had reached settlements with AIG and Chubb.  That left Allianz as the sole counterparty.  *Id.*

Between September 23 and October 1, 2024, the panel held a seven-day evidentiary hearing in San Francisco.  *Id.*  Multiple witnesses testified, and more than 300 joint exhibits, plus others, were received.  *Id.* at 3–4.  The transcript ran 1,621 pages.  *Id.*  Flex and Allianz submitted two rounds of post-hearing briefs.  *Id.* at 4.  On December 16, 2024, the hearing was closed.  *Id.*

### F.    The Arbitral Award

On January 21, 2025, the panel issued the Award.  *Id.* at 22.  As a mathematical framework, the Award noted that Flex's total loss had been $55,963,951, comprised of the

---

[3] The panel also resolved disputes related to document production and depositions, which, it later stated, had "no effect on [the] Award."  Award at 3.

$42,750,000 it paid to ATI, plus $13,213,951 in defense costs;[4] and that Flex was seeking to recover $10,963,951 from Allianz, plus pre-award interest. *Id.* at 4. This last figure represented the loss that remained after subtracting the $45 million in insurance policies below Allianz's layer in the insurance tower. *Id.* The Award noted that Allianz had principally argued that Flex's recoverable loss did not exceed $45 million—and therefore could not reach Allianz's layer—because some percentage of the total loss should be allocated to the two non-covered corporate defendants in the ATI action. *Id.* The panel, however, ruled for Flex, holding that the parties' insurance policy entitled it to receive the entirety of its $10,963,951 claim against Allianz—*i.e.*, a "100% allocation." *Id.* at 4–5.

The panel reasoned as follows. It first resolved the parties' dispute over the applicable law governing allocation of loss where, as here, a settlement resolves a mix of insured and uninsured claims. *Id.* 7–10. Flex argued for Delaware law's "larger settlement" rule, under which a loss is fully recoverable unless the insurer can show that the non-covered conduct increased its liability. *Id.* Allianz countered that New York's "relative exposure" rule governs, under which the insurer and insured allocate settlement costs between covered and non-covered parties, with the insurer bearing the burden to prove the amount that should be excluded from coverage. *Id.* The panel, siding with Allianz, found New York's relative exposure rule to apply. *Id.* at 10. It noted that the applicable provision of the policy, section 5.10, stated that, for claims

---

[4] In the litigation before this Court, the parties sought leave to redact the total-loss and defense-cost figures. *See* Dkts. 15 (Allianz's motion to seal), 33 (same by Flex). But basic arithmetic, applied to the unredacted portions of the public filings, readily yields those amounts. Forty-five million dollars (the sum of the XL, AIG, and Chubb policy limits) plus $10,963,951 (Flex's requested recovery here) equals the redacted loss amount. Subtracting $42,750,000 (the value of the ATI action settlement) from $55,963,951 equals Flex's defense costs of $13,213,951. And both figures are germane to the Court's reasoning. Accordingly, the Court cites these figures in this decision. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006).

against covered and non-covered defendants, "the insured and the insurer shall use their best efforts to determine a fair and proper allocation of loss covered under this policy," but did not there state a source of law. *Id.* at 7. Drawing on a provision elsewhere in the policy, the panel determined that New York law applied,[5] and required application of the relative exposure rule where, as here, the policy provision lacked explicit language to the contrary. *Id.* at 7–10.

Applying the relative exposure rule, the panel concluded that Allianz should bear the entire covered loss. *Id.* at 14. Allianz had argued that Flex's settlements with the three lower insurance layers for less than 100% of their limits demonstrated that the proper allocation of loss could not be 100%. *Id.* at 11. The panel "considered [this argument] carefully," but rejected it, reasoning as follows. *Id.*

The panel first determined that Flex's communications with XL (the primary insurer) as to the allocation of defense costs were protected settlement communications that could not be considered "as evidence adverse to Flex." *Id.*

The panel next addressed Allianz's argument that Flex's decision to accept "less than the entire $15 million" of each policy layer from XL, AIG, and Chubb constituted course-of-dealing evidence that allocation should be less than 100%. *Id.* at 11–12. The panel found that argument unpersuasive, because "each insurer settled with Flex at a different time, with a different percentage allocation," and privy to different facts at the time of settlement. *Id.* at 12. XL

---

[5] The panel noted that section 5.19 of the policy provided that New York state law generally governed. *Id.* at 5–6. It recognized that section 3.42(iii) stated that "any applicable law [as defined therein] most favo[]rable to the insurability of damages . . . shall apply" if Flex obtained a written legal opinion applying that other law in its favor. *Id.* at 6. Based on that provision, the panel had ruled before the hearing that Delaware—not New York—law applied to the issue of whether punitive damages, and claims for intentional conduct and unjust enrichment, could be insured. *Id.* Flex argued that Delaware law favoring the larger settlement rule similarly applied, displacing New York's relative exposure rule. *Id.* The Award rejected this argument because Flex had not submitted a written legal opinion to that effect. *Id.*

settled with Flex early, long before Flex settled with ATI, while the ATI action was delayed during the pandemic. *Id.* AIG and Chubb, in contrast, settled with Flex after the ATI settlement, and indeed after arbitration commenced—yet, despite identical policy language as to allocation, each settled for a different amount. *Id.* at 12–13. The panel thus concluded that it could not "rely on the settlements Flex reached with the other carriers" as the measure of the proper allocation, because "[e]ven if these settlements were to be considered, they are inconclusive as to what the fair and proper allocation of loss should be between Flex and Allianz." *Id.* at 13.

The panel next noted the "nature of the claims asserted in the ATI Action"—specifically, that ATI had pursued "all claims jointly and severally against all parties" under theories of conspiratorial, and aiding and abetting, liability. *Id.* The liability of the two uninsured corporate entities was thus "concurrent and conterminous" with that of the four insured directors and officers, such that those four insured parties had exposure for acts and omissions of the non-insured corporate entities. *Id.* Thus, "[e]ach of the six defendants had the same relative exposure." *Id.*[6]

The panel then addressed whether the parties had used "best efforts" to determine a fair and proper allocation, as required by the policy. *Id.* at 14–15. It found that Flex had done so. *Id.* at 16. Based on both sides' expert testimony, the panel found "best efforts" "a very subjective standard" that "depends on specific facts" and meant "doing a 'reasonable job' to accomplish an allocation." *Id.* at 15. Although the panel had held Flex's allocation proposals to

---

[6] Relatedly, the panel rejected as factually unsubstantiated Allianz's argument that, in the event the panel applied Delaware's larger settlement rule, the presence of the two uninsured corporate defendants—Flex and NEXT—had increased the amount of the settlement Flex had paid ATI. Award at 14. In fact, the panel noted, the unrebutted evidence was that ATI had settled for a total of $42.75 million, foregoing its demand for more money in exchange for NEXT's agreement to admit wrongdoing. *Id.* It therefore found that "the presence of the two uninsured corporate defendants actually reduced rather than increased" the settlement amount. *Id.*

other carriers to be protected settlement communications that could not be considered as evidence of the value of Flex's claims, the panel considered Flex's settlement offers of 80%, 75%, and 65% allocations for the limited purpose of determining whether Flex had made "best efforts." *Id.* at 15–16. The panel also noted that Flex had "communicated fully with Allianz regarding key developments in the ATI Action, as evidenced by the numerous emails and slide decks from trial counsel on which Allianz's [representative] was copied." *Id.* at 16. In contrast, as to Allianz's efforts, the panel noted that Allianz's own expert had testified: "I would never say to do what Allianz did here . . . they could have done it better." *Id.* (cleaned up).

The panel concluded that Allianz had not met its burden of proving that any part of the ATI settlement should be excluded from coverage. *Id.* at 17. The only evidence that Allianz had offered was an expert's testimony and report, which, the panel stated, were "unpersuasive and of little, if any, probative value." *Id.* The panel noted that the expert had never read the policy at issue; did not consider any correspondence among the parties as to allocation; and premised his opinions on the assumption, fed to him by Allianz, that "the liability of the defendants on any claim should be allocated on a *per capita* basis." *Id.* On that assumption, the expert had simply "count[ed] hats": he allocated one-third of the loss to Flex and NEXT because they represented two of the six defendants. *Id.* at 17–18. But the expert otherwise "made no appreciable effort to analyze and evaluate the relative exposure of the six ATI defendants." *Id.* at 18. Nor did Allianz offer legal support for the expert's decision to use the *per capita* methodology. *Id.* Thus, Flex's "100% allocation of loss" to Allianz "remain[ed] uncontested." *Id.*

After deciding other matters not relevant here, the panel awarded Flex its requested $10,963,951, which represented a "100% allocation" of Flex's loss to Allianz. *Id.* at 18, 21. The panel also granted Flex pre-award interest on this sum at the New York statutory rate of nine

percent per year, running from the date on which Chubb made its settlement payment to Flex.[7]
*Id.* at 21.

## II.    Procedural History of This Litigation

On February 21, 2025, Flex filed a petition, pursuant to the Federal Arbitration Act
("FAA"), 9 U.S.C. §§ 1 *et seq.* and 201 *et seq.*, for an order confirming the award, and a
corresponding judgment against Allianz.  Dkt. 1; *see also* Dkts. 1-1–1-6 (attaching Award,
policy, and selected exhibits).

On March 18, 2025, Flex filed a memorandum of law in support of confirmation.
Dkt. 18.  That day, Allianz filed a cross-motion to vacate the award, Dkt. 16; a supporting
memorandum of law, Dkts. 19, 21; a declaration by William J. Brennan appending exhibits,
Dkts. 17, 20; and a letter motion to seal portions of its filings that it had redacted, Dkt. 15.  On
April 3, 2025, Flex filed a motion to strike the Brennan Declaration, Dkt. 26, on the ground that
it improperly supplemented the arbitral record, and a supporting memorandum of law, Dkt. 27.

On April 15, 2025, Allianz opposed Flex's motion to confirm, Dkt. 31, appending
another declaration by Brennan, Dkt. 31-1, which attached an exhibit, Dkt. 31-2.  The same day,
Flex opposed Allianz's motion to vacate, Dkt. 32; filed a supporting declaration by Gregory J.
Phillips, Dkts. 35, 36; and moved to seal certain exhibits, Dkts. 33–34.

On April 22, 2025, Allianz replied, Dkt. 41, as did Flex, Dkt. 39, which appended another
declaration by Phillips and exhibits, Dkt. 40.

---

[7] The panel rejected Flex's argument that the pre-award interest ran from the date of the ATI
settlement.  Award at 21.  Allianz's obligation to indemnify Flex, the panel reasoned, only
became binding when all excess insurance layers below it had been exhausted.  *Id.*  Interest
therefore accrued from the date on which Flex received Chubb's settlement payment.  *Id.*

On April 24, 2025, Allianz opposed Flex's motion to strike Brennan's declaration, Dkt. 44, and filed a declaration by Jason L. Ederer, Dkts. 45–46, and an exhibit, Dkts. 45-1, 46-1.  On May 1, 2025, Flex replied in support of its motion to strike.  Dkt. 48.

On August 15, 2025, Allianz filed a notice of supplemental authority.  Dkt. 49.

## III.    Applicable Legal Standards

### A.    Motions to Confirm or Vacate Arbitral Awards Generally

Arbitral awards are not self-enforcing, and must therefore "be given force and effect by being converted to judicial orders by courts."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).  The FAA authorizes a district court to confirm and/or vacate an arbitral award, "either in whole or in part."  *Id.* at 104.  Such review is "severely limited, so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (citation omitted); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference.")*.*  "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted); *see also* 9 U.S.C. § 9.  Accordingly, "[t]he showing required to avoid summary confirmation of an arbitration award is high."  *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).  A court must confirm an award if there is "even a barely colorable justification for the outcome reached."  *Id.* at 13 (quoting *Matter of Andros Compania Maritima, S.A.*, 579 F.2d 691, 704 (2d Cir. 1978)).

A petition to confirm an arbitral award is "treated as akin to a motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 109. To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a summary judgment motion, the opposing party must establish the existence of a genuine issue of material fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In determining whether there is a genuine issue of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### B.    Grounds for Vacatur and/or Nonenforcement

The FAA allows a district court to vacate an arbitral award "only in very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995); *see* 9 U.S.C. § 10(a). As discussed in greater depth below, these include:

> (3) *where the arbitrators were guilty of misconduct* in refusing to postpone the hearing, upon sufficient cause shown, or *in refusing to hear evidence pertinent and material to the controversy*; or . . .
>
> (4) *where the arbitrators exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(3)–(4) (emphases added).

***Section 10(a)(3)***: The FAA authorizes a court to vacate an arbitral award if the arbitrators' refusal to hear pertinent and material evidence rendered the proceeding "fundamentally unfair." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)

("*Tempo Shain*") (quoting *Teamsters, Loc. Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 906 (5th Cir. 1984)).  Only the consequence of such refusal—not the arbitrators' subjective intent—is relevant.  *See Cofinco, Inc. v. Bakrie & Bros., N.V.*, 395 F. Supp. 613, 615 (S.D.N.Y. 1975) ("It makes no difference that the panel may have acted only in neglectful disregard rather than by explicitly 'refusing' to hear the evidence." (citation omitted)).

To be sure, "[i]t is well settled that procedural questions that arise during arbitration, such as . . . which evidence to receive or exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts." *Charleston Immersive/Interactive Media Studio, LLC v. Aydin*, No. 24 Civ. 4943 (PAE), 2025 WL 219933, at *4 (S.D.N.Y. Jan. 16, 2025) (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016)).  The party seeking vacatur must demonstrate that the arbitrators' exclusion of evidence was prejudicial, such that the party's "right to be heard [was] grossly and totally blocked." *Stifel, Nicolaus & Co., Inc. v. Forster*, No. 14 Civ. 6523, 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015) (citation omitted).

**Section 10(a)(4)**:  The FAA also authorizes vacatur where the arbitrators exceeded their powers.  A party seeking relief under this provision "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).  "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).  Where the arbitrators are charged with interpreting a contract, their decision must stand if it "even arguably constru[ed] or appl[ied] the contract," "regardless of a court's view of its (de)merits." *Oxford Health Plans LLC*, 569 U.S. at 569 (citation omitted).  A court may vacate the award only if it finds that the arbitrators substituted their "own notions of economic justice" for the parties' agreement. *Id.* (quoting *E. Associated Coal Corp. v. United*

*Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)) (cleaned up).  Otherwise, the

"arbitrator's construction holds, however good, bad, or ugly."  *Id.* at 573.

     ***"Manifest disregard"***:  An arbitral award may also be vacated if it is in "manifest

disregard" of the law or the terms of the parties' relevant agreement.  *Schwartz v. Merrill Lynch*

*& Co., Inc.*, 665 F.3d 444, 451–52 (2d Cir. 2011).  This standard "largely operates as a judicial

gloss on the specific grounds for vacatur enumerated in section 10 of the FAA," rather than

broadening those grounds.  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 15 Civ. 7428 (PAE), 2016

WL 3913599, at *10 (S.D.N.Y. July 15, 2016) (citation omitted); *see also Hall St. Assocs.,*

*L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–85 (2008) (FAA's grounds for vacatur are "exclusive").

A court may vacate an arbitral award on this ground only if it "finds both that (1) the arbitrators

knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the

law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."

*Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (citing *Wallace v.*

*Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)).  Vacatur for manifest disregard of the law is "a

doctrine of last resort," reserved for "those exceedingly rare instances where some egregious

impropriety on the part of the arbitrators is apparent."  *Duferco Int'l Steel Trading*, 333 F.3d

at 389.

     ***Due process***:  The Convention on the Recognition and Enforcement of Foreign Arbitral

Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention" or "Convention"), as

applied through sections 201 through 208 of the FAA, also enumerates certain grounds on which

a court may refuse to recognize and enforce an arbitral award.  As relevant here, article V(1)(b)

of the Convention allows such refusal if the "party against whom the award is invoked was not

given proper notice of the appointment of the arbitrator or of the arbitration proceedings[,] or

was otherwise unable to present his case." This defense "essentially sanctions the application of the forum state's standards of due process," and such "due process rights are entitled to full force under the Convention as defenses to enforcement." *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145–46 (2d Cir. 1992) ("*Iran Aircraft*") (quoting *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 975–76 (2d Cir. 1974)) (citation omitted). Under the U.S. Constitution, the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 146 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (citation omitted).

## IV.    Discussion

Allianz makes three principal arguments for vacatur and/or non-enforcement of the award: that the panel (1) improperly refused to consider settlement-related evidence for the purpose of determining the loss, if any, that should be allocated to Flex; (2) manifestly disregarded New York law and the parties' agreement by misconstruing the policy's "best efforts" requirement; and (3) erroneously applied the larger settlement rule, whereas it should have applied the relative exposure rule, in allocating loss between the parties. Allianz also argues, in passing, that (4) the panel was unqualified and (5) Flex did not offer sufficient evidence to support confirmation of the award.

None of these arguments has merit. The Court addresses each in turn, and then takes up Flex's bid for attorney's fees and costs, and the parties' motions with respect to sealing.

### A.    The Panel's Consideration of Settlement-Related Evidence for Limited Purposes

Allianz argues that the panel improperly refused to consider "crucial" evidence reflecting negotiations between Flex and its non-Allianz insurers. Dkt. 19 ("Allianz Vacatur Br.") at 26–28. This ruling was wrong, it argues, because (1) the evidence reflected "*allocation*

communications," not protected "settlement communications," *id.* at 24 (emphasis in original); and (2) Flex waived "privilege" over these communications by relying on them for other purposes during the arbitration and not timely objecting to Allianz's use of them during the hearing, *id.* at 25.  Allianz also asserts that the panel unfairly deviated from its pledge not to strictly apply the rules of evidence.  *Id.* at 17.  Allianz thus argues that the panel's evidentiary ruling requires vacatur, as a violation of Allianz's due process rights, under Article V(1)(b) of the New York Convention, *id.* at 24–26, and as misconduct, under section 10(a)(3) of the FAA, *id.* at 26–28.

Flex opposes Allianz's bid for relief based on the treatment of the communications between Flex and the other insurers.  Dkt. 32 ("Flex Opp'n") at 16–25.  It argues that the panel did, in fact, consider these communications, but did not find them probative as to the value of Flex's coverage claim.  *Id.* at 16–17.  Even if the panel did not consider the communications for such purposes, Flex argues, that ruling was a defensible application of the governing AAA rules. These required the panel to make determinations as to the admissibility of evidence, *id.* at 17–18, and the panel did so in finding that the communications reflected settlement discussions and that Flex had not waived protections over these.  *Id.* at 21–25.  Finally, as to Allianz's claim of unfair surprise, Flex notes that Allianz had been on notice long before the hearing that Flex contended that the communications on which Allianz intended to rely were legally protected settlement communications.  *Id.* at 20.

Flex is correct.  As reviewed below, Allianz has not carried its heavy burden to show that the arbitral proceedings were fundamentally unfair, or violated due process, based on the panel's consideration of certain allocation-related evidence for some purposes but not others.

1. **Merits of the Panel's Evidentiary Rulings as to Settlement Communications**

At the threshold, the panel had broad discretion to decide questions of evidentiary admissibility, privileges, and weight. The Second Circuit has repeatedly held that "[a]rbitrators have substantial discretion to admit or exclude evidence." *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) ("*LJL 33rd Street*"). Arbitrators making evidentiary determinations "need not follow all the niceties observed by the federal courts." *Tempo Shain*, 120 F.3d at 20 (quoting *Bell Aerospace Co. Div. of Textron v. Loc. 516*, 500 F.2d 921, 923 (2d Cir. 1974)). And unless "fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Id.* So long as a "barely colorable" justification exists for a panel's decision to exclude evidence, a court cannot overturn an award. *Rai v. Barclays Cap. Inc.*, 739 F. Supp. 2d 364, 375 (S.D.N.Y. 2010), *aff'd*, 456 F. App'x 8 (2d Cir. 2011).

The panel here articulated multiple reasons for putting aside the evidence on which Allianz relied: Flex's communications with the three insurers below Allianz concerning settlements that ultimately yielded Flex less than 100% allocation of expenses to those insurers. *See* Award at 11–14. The reason that Allianz challenges here concerned admissibility. The panel held that these communications were protected settlement negotiations, which therefore could not be considered as evidence of the value of Flex's claim—namely, the proper allocation of Flex's loss. *Id.* at 11–13. It held, however, that Flex's having made settlement offers was permissibly considered in determining whether Flex had met the "best efforts" requirement of the policy. *Id.* at 15–16.

The panel's evidentiary decisions were well within its broad discretion. Under section 5.11 of the policy, the arbitration was governed by the AAA's Commercial Arbitration Rules,

under which the arbitrators were expressly not bound by federal or state rules of evidence.

Dkt. 40-2 at 42.  Relevant here, AAA Rule 35 provides:

> (a)  The parties may offer such evidence as is relevant and material to the dispute . . . .  Conformity to legal rules of evidence shall not be necessary. . . .
>
> (b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

The panel's decision—that Flex's communications with XL, AIG, and Chubb concerning potential and actual settlement terms should not be considered as evidence of the value of Flex's claim against Allianz—fell well within the broad judgment that Rule 35 accorded it to make admissibility determinations.  Indeed, that determination would have comported with New York law, which, as noted, otherwise governed the arbitration.  Under it, evidence of offering or accepting "any valuable consideration in compromising or attempting to compromise a claim . . . shall be inadmissible as proof of . . . the amount of damages."  N.Y. C.P.L.R. § 4547; *see, e.g.*, *Brill & Meisel v. Brown*, 113 A.D.3d 435, 436–37 (1st Dep't 2014) (damages analysis for settlement purposes was inadmissible to prove liability or value of claims).  Flex's communications with XL, AIG, and Chubb as to potential and actual settlements could readily be found to qualify as "compromising or attempting to compromise a claim." *See, e.g.*, *Charles Hyman, Inc. v. Olsen Indus., Inc.*, 227 A.D.2d 270, 276 (1st Dep't 1996) (trial court erred under New York law by calculating value of claim based on settlement offer); *82 Retail LLC v. Eighty Two Condo.*, 117 A.D.3d 587, 589 (1st Dep't 2014) (dismissal of claim proper under New York law where claim depended on inadmissible evidence of settlement negotiations to prove liability and/or value of the claim).

Allianz's two challenges here to the panel's admissibility determinations do not demonstrate a misapplication of New York law, let alone an abuse of the panel's broader

discretion under Rule 35.  First, Allianz asserts that the negotiations at issue were "*allocation* communications," not protected "settlement communications."  Allianz Vacatur Br. at 24 (emphasis in original).  But that distinction has no basis in law.[8]  However else they might be characterized, the negotiations over the monetary terms under which Flex would settle its coverage disputes with its other carriers fit well within C.P.L.R. 4547's broad definition of compromise negotiations.[9]

Second, Allianz argues that Flex waived any settlement-related protections during the arbitration by offering "the same communications" as support for its contention that Flex satisfied the policy's best-efforts requirement, and by not timely objecting when Allianz used the "same" documents in the arbitration.  *Id.* at 25.  That too is unpersuasive.  To be sure, a party

---

[8] Allianz cites one New York Appellate Division decision as ostensibly supporting that "[c]ommunications undertaken to comply with a contractual best efforts duty are not privileged settlement communications."  Allianz Vacatur Br. at 24.  That case is inapposite.  *Nineteen Eighty-Nine, LLC v. Icahn* held that C.P.L.R. 4547 did not protect communications in which the parties had set forth their respective positions as to a stock options participation agreement, but in which they had not made "any offer or acceptance of a compromise."  96 A.D.3d 603, 606–07 (1st Dep't 2012) (citation omitted).  Here, in contrast, Flex's communications with its insurers went further, and clearly extended compromise offers.  *See* Award at 11–12, 15–16.

[9] Allianz argues alternatively that the panel should have considered these communications as "course of dealing" evidence.  *See, e.g.*, Dkt. 41 ("Allianz Rep.") at 8–10.  That argument also fails, on the ground that it largely reattempts to characterize the communications as concerning allocation rather than settlement.  *Id.* at 9 ("[T]he parties' dispute did not directly concern the *amount* of damages . . . but [] the correct *way* to allocate . . . ." (emphases in original)).  And the authorities that Allianz cites are inapposite, nonbinding on this Court, or both.  *See, e.g.*, *Am. Soc. of Composers, Authors & Publishers v. Showtime/The Movie Channel, Inc.*, 912 F.2d 563, 580–81 (2d Cir. 1990) (settlement offer admissible in "unusual" proceeding because proponent did "not seek to use [it] against the offeror"); *Clerveaux v. E. Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 243 (2d Cir. 2021) ("[E]vidence of settlement negotiations may be used to demonstrate bad faith."); *In re Liquidation of Midland Ins. Co.*, 2008 WL 151786, at *8 (N.Y. Sup. Ct. Jan. 14, 2008) (settlement agreements admissible because they were not offered to establish "a particular dollar value of claim," but rather to refute adversary's allegations as to proper allocation methodology), *aff'd*, 929 N.Y.S.2d 116 (1st Dep't 2011).  As reviewed above, Flex's communications with the three insurers below Allianz concerning allocation between Flex and those insurers fall squarely within C.P.L.R. 4547, regardless of how Allianz might label them.

may not use *privileged* communications as both a sword and a shield—a rule that rests on "fairness considerations." *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). But that line of authority does not bear on the situation here, which did not implicate waivers of attorney-client privileged communications, but instead involved the parties' proposed uses—for different purposes—of settlement communications. The rules governing settlement communications—such as New York C.P.L.R. 4547 and Federal Rule of Evidence 408—do not confer or recognize a privilege. They govern admissibility, not disclosure. *See Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. Aug. 20, 2018) ("Rule 408 does not apply to discovery."). They "limit[] abusive use of positions taken during the process" of pursuing settlement. *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 71507, at *3 (S.D.N.Y. Feb. 20, 1996). Relevant here, the rules allow the use of settlement-related evidence for purposes "other than to prove or disprove the validity of the claims that the offers were meant to settle" or the value of those claims. *See Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989). The panel here reasonably applied that principle, reaching different outcomes as to the different uses proposed by the parties of Flex's settlement communications, consistent with the principle that evidence may be "admissible for one purpose but [] inadmissible for another." *United States v. Washington*, 592 F.2d 680, 681 (2d Cir. 1979) (citing Fed. R. Evid. 105).

Also unavailing are Allianz's assertions that Flex "failed to make timely objections" and "allowed Allianz to use these [settlement-related] documents freely during the Hearing." Allianz Vacatur Br. at 25. Allianz does not provide record support for these claims. And the record reflects the contrary—that Flex repeatedly invoked the protections of Rule 408 at the hearing, including in its counsel's opening statement, Hr'g Tr. Cont. at 13 ("Rule 408 clearly bars Flex's

compromise offers from being admitted for the very purpose for which Allianz wants to use them[:] to prove or disprove the amount of Flex's claim."), and in its post-hearing briefs, Dkt. 17-19 at 15 ("Allianz is trying to use Flex's settlement communications for the exact purpose for which they may not be used: 'either to prove or disprove the validity or amount of a disputed claim . . . .'").

The line the panel drew as to the permissible uses of settlement communications was therefore well within its broad discretion over evidentiary matters. At a minimum, it defensibly concluded that Flex's settlement communications could be considered to determine whether "Flex met the best efforts requirements" of the policy, while finding the substance of Flex's allocation proposals to carriers below Allianz to be inadmissible settlement communications, which could not be considered as evidence supporting Allianz's claim that Flex was entitled to less than 100% allocation (*i.e.*, the value of the claim). Award at 11–16.

Even if these evidentiary calls had been incorrect—which they were not—the panel recited an alternative basis for rejecting the inference Allianz sought to draw from Flex's allocation proposals. As the panel noted, in making these proposals, Flex had "preserved its position that it was entitled to a 100% allocation of loss pursuant to § 5.10" of the policies. Award at 11.[10] In other words, Flex's offers to allocate less than 100% of its loss to the other insurers did not represent its belief as to its true entitlement. They instead reflected pragmatic attempts "to get a deal done." Hr'g Tr. at 169. The panel thus found Flex's settlement

---

[10] Testimony during the arbitral hearing supported that assessment. *See, e.g.*, Hr'g Tr. at 128 ("Flex consistently said 100 percent should be covered."); *id.* at 169 ("[F]or purposes of settlement, we [Flex] weren't going to get them [the insurers] to give us 100 percent coverage. Doesn't mean we didn't think 100 percent coverage was appropriate, but to try to get a deal done[,] we would need to try to induce them to contribute by reducing our settlement offer from our full claim."); *id.* at 173 ("The position from a legal matter, or what Flex actually believed, was that they were entitled to 100 percent coverage throughout.").

communications, even if admitted as evidence as to how to allocate loss, minimally probative on

that point. *See Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992) (Federal Rule of

Evidence 408 excludes settlement communications in part because such offers can be "irrelevant,

since the offer may be motivated by a desire for peace rather than from any concession of

weakness of position" (quoting Fed. R. Evid. 408, Notes of Advisory Committee on Proposed

Rules)). The panel's judgment that these communications had limited probative value further

undermines Allianz's challenge to the award. *Willemijn Houdstermaatschappij, B.V.*, 103 F.3d

at 13 (arbitral award must be confirmed if there is "even a barely colorable justification for the

outcome reached").

### 2.    Fundamental Fairness Under FAA § 10(a)(3)

Even assuming the panel's evidentiary rulings as to Flex's settlement communications

were outside its broad discretion, such would not have merited vacatur under section 10(a)(3) of

the FAA. Under it, a court may vacate an arbitral award only if the arbitrators' refusal to hear

pertinent and material evidence made the proceeding "fundamentally unfair." *Tempo Shain*, 120

F.3d at 20. And "procedural questions that arise during arbitration, such as which witnesses to

hear and which evidence to receive or exclude, are left to the sound discretion of the arbitrator

and should not be second-guessed by the courts." *Nat'l Football League Mgmt. Council v. Nat'l

Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) (citing *United Paperworkers

Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)). The party seeking vacatur must

instead show that the arbitrators' refusal to receive certain evidence "grossly and totally blocked"

the "fundamental right to be heard." *Cofinco, Inc.*, 395 F. Supp. at 615.

For this reason, in the rare cases in which courts have vacated awards based on a refusal

to receive evidence, the party seeking vacatur was found to have been unfairly deprived of the

opportunity to present crucial evidence.  In *Tempo Shain*, for example, the Second Circuit held

fundamentally unfair the arbitral panel's refusal to postpone its hearings to allow a key witness

with unique knowledge to testify, requiring vacatur.  120 F.3d at 17–18.  In that contract dispute,

the corporate defendant had sought to call its former division president, who had "crucial

testimony concerning the negotiations and dealings between the parties."  *Id.* at 17.  As a result

of a serious medical condition affecting his wife, however, the witness became temporarily

unable to testify, but the panel closed the hearings and ruled without hearing his testimony,

which the panel stated would have been cumulative of existing evidence.  *Id.* at 17–18.  Vacating

the award, the Circuit held that the panel had lacked a "reasonable basis" to find the witness's

testimony cumulative; in fact, the Circuit noted, he was "the only person" who could have

testified to critical issues in the case.  *Id.* at 20–21.

    The other cases in this Circuit that held similarly have likewise involved the wrongful

exclusion of unique and pivotal evidence.  In *Attia v. Audionamix, Inc.*, the arbitrator wrongly,

and without any legal basis, excluded an affidavit by a witness with unique testimony that would

have been admissible under the Federal Rules of Evidence and "directly refuted" the other side's

claims.  No. 14 Civ. 706, 2015 WL 5580501, at *6–8 (S.D.N.Y. Sept. 21, 2015).  In *Kaplan v.

Alfred Dunhill of London, Inc.*, the arbitrator incorrectly held that he lacked jurisdiction to

reopen an arbitral hearing, despite the absence of a party that had not received notice of the

hearing.  No. 96 Civ. 258, 1996 WL 640901, at *5–7 (S.D.N.Y. Nov. 4, 1996).  And in *Vernon-

Hunt v. Guzman*, the panel, having originally stated that certain exhibits "would be the exclusive

evidence used to decide the award," did not review those exhibits due to its "administrative

error" and reached its conclusions in express reliance on its mistaken belief that no exhibits had

been submitted.  No. 20 Civ. 4755, 2021 WL 4950622, at *4 (S.D.N.Y. Oct. 25, 2021) ("The

Court emphasizes that its holding does not require that an arbitration panel expressly consider all evidence that a party submits to it. For example, had the arbitral panel decided to exclude Petitioner's proffered evidence, this Court would hesitate to vacate the award.").

The out-of-Circuit cases on which Allianz relies likewise involved the errant exclusion of vital evidence. *See, e.g.*, *Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 70 F.3d 847, 848 (5th Cir. 1995) (vacating award where "arbitrator misled Exxon into believing that evidence was admitted, and then refused to consider that evidence"); *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Loc. 901*, 763 F.2d 34, 37–38 (1st Cir. 1985) ("*Hoteles Condado Beach*") (same, where "arbitrator's refusal to give any weight to the criminal trial transcript presented into evidence by the Company, coupled with his ruling that [husband of sexual harassment victim] could not be present during [victim's] testimony, deprived the Company of a full and fair hearing"); *Lindsey v. Travelers Com. Ins. Co.*, 636 F. Supp. 3d 1181, 1185–86 (E.D. Cal. 2022), *aff'd*, No. 22-16795, 2023 WL 8613598 (9th Cir. Dec. 13, 2023) (same, where arbitrator denied plaintiff's discovery request as irrelevant, and then granted summary judgment against plaintiff for failing to produce such evidence).

Conversely, courts have declined to vacate awards where, notwithstanding an arbitrator's refusal to hear evidence, the party seeking vacatur could have offered alternate evidence to prove the same point. In *LJL 33rd Street*, for example, the Second Circuit reversed a grant of vacatur, finding the exclusion of hearsay evidence "within the arbitrator's authorized discretion." 725 F.3d at 187. The district court, in vacating, had reasoned that "in arbitration proceedings there is no need to comply with strict evidentiary rules." *Id.* at 194. Reversing, the Circuit held that although the exclusion "may well have [] harmed" the party seeking vacatur, any harm was not fundamentally unfair because the party could have avoided the hearsay issue by presenting other

admissible evidence. *Id.* The Circuit distinguished *Hoteles Condado Beach*, *supra*, noting that the First Circuit there had found the disregarded evidence "central to a litigant's position *and no other evidence was available to sustain it*." *Id.* (emphasis added). And courts have confirmed awards in the face of consequential challenges to the exclusion of evidence, provided a barely colorable justification could be made for the ruling, even if it was one the arbitrator had not articulated. *See, e.g.*, *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 107 (2d Cir. 2013) (affirming denial of vacatur where, "giving full credence to [the] portrayal of the facts" by the party seeking vacatur, panel unilaterally refused to let more than one witness testify after that witness testified for less than 30 minutes); *Rai*, 739 F. Supp. 2d at 374–75 (denying vacatur where panel refused to postpone hearing to allow certain live testimony and excluded affidavit from same witness).

Measured against these precedents, the panel's decision here not to consider Flex's settlement communications with other insurers as evidence of the proper loss allocation was, for multiple reasons, not fundamentally unfair.

First, in contrast to the rare vacaturs based on the exclusion of evidence, the panel's application of the rules of evidence here was within its broad discretion. *Nat'l Football League Mgmt. Council*, 820 F.3d at 545 ("[P]rocedural questions that arise during arbitration, such as which witnesses to hear and which evidence to receive or exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts."); *Kolel Beth Yechiel Mechil*, 729 F.3d at 107 ("Arbitrators are accorded great deference in their evidentiary determinations."). It was a far cry from the extreme deviations reflected in the cases with vacaturs discussed above.

Second, as the record reflects, Allianz had ample warning that Flex's communications with the other three insurers regarding allocation might be excluded as protected settlement

communications, and had—but forewent—opportunities to offer other evidence supporting that

some loss should be allocated to Flex.  On July 3, 2024, more than 11 weeks before the hearing

started on September 23, 2024, Allianz, anticipating Flex's hearing argument that its allocation-

related offers to the other insurers should be excluded as protected settlement communications,

opposed this argument in a pre-hearing submission seeking summary judgment.  It wrote:

> *Allianz expects that Flex will suggest that these communications* [*i.e.*, Flex's
> allocation offers to AIG and Chubb] *were privileged settlement communications.*
> This would be specious for several reasons.  First, these communications were not
> marked as settlement communications and they were not listed on Flex's privilege
> log.  Second, these negotiations began long before the ATI Action settled, meaning
> that it was unknown whether any excess layer would be implicated.  And third, if
> Flex claims these were settlement negotiations rather than the contractually-
> required "best efforts" to find a fair and proper allocation, Flex would effectively
> admit that it never engaged in the mandatory best efforts process with any insurer.

Dkt. 36-2 at 3 n.2 (emphasis added).  At the hearing, Flex in turn so argued in its

opening:

> Rule 408 clearly bars Flex's compromise offers from being admitted for the very
> purpose for which Allianz wants to use them[:] to prove or disprove the amount of
> Flex's claim. . . .  Flex's offers are admissible for the limited purpose of showing
> Flex's best efforts, but inadmissible as proof of the value of Flex's claim.

Hr'g Tr. Cont. at 13.  And at the close of the hearing, Allianz conceded that it had been given a

fair opportunity to present its case.  *See* Hr'g Tr. at 190.[11]  In their post-hearing briefs, the parties

reiterated their arguments over whether Flex's allocation proposals were protected settlement

communications, with Flex contending they were, Dkt. 17-18 at 33, and Allianz continuing to

rely on them and urge their admissibility, *e.g.*, Dkt. 17-21 at 20 n.41.  Allianz's present claim

that it "was provided no opportunity to argue about whether this settlement privilege rule should

apply," Dkt. 31 ("Allianz Opp'n") at 9, is therefore demonstrably false.  Allianz was on ample

---

[11] Arbitrator Levit asked: "And Allianz has had a full and fair opportunity to present its
defenses?"  Hr'g Tr. at 190.  Allianz's counsel responded: "Fair enough, sir."  *Id.*

notice that in relying on Flex's settlement communications, it was relying on evidence whose admissibility was contested and in doubt.

Also incorrect is Allianz's claim that the panel reversed course on this issue. Allianz cites statements by an arbitrator to the effect that "the rules of evidence do not formally apply" and were "not to be strictly applied." *E.g.*, Allianz Vacatur Br. at 17. But Allianz takes those statements out of context. On September 26, 2024, during the hearing's fourth day, arbitrator Levit, while overruling a hearsay objection by Allianz, stated: "By the way, the rules of evidence do not formally apply if you look at Rule 34."[12] Hr'g Tr. Cont. at 58. On October 1, 2024, during the hearing's seventh day, in response to repeated objections by a witness's lawyer, the same arbitrator stated:

> [U]nder Rule 35[,] the Commercial Rules under which we are operating, the rules of evidence are not to be strictly applied, so I think that it's not productive to keep making the kinds of objections that you have made regarding argumentative and so forth. So let's try to move on . . . and listen to the witness's testimony.

*Id.* at 82. Contrary to what Allianz implies, these statements were not made in relation to Flex's settlement communications. The arbitrator was merely articulating, in different contexts, the background principle that arbitrators are not strictly bound by the rules of evidence. *See, e.g.*, *LJL 33rd Street*, 725 F.3d at 194–95 (arbitrators need not "comply with strict evidentiary rules," and have "substantial discretion to admit or exclude evidence"). And the rule to which arbitrator Levit evidently intended to advert made that clear, providing that the arbitrators would ultimately "determine the admissibility, relevance, and materiality of the evidence offered." AAA Rule 35. Unlike in a number of the cases on which it relies, Allianz cannot claim surprise.

Moreover, there were other means by which Allianz could have supported its contention that a fair allocation would have allocated some of the loss to Flex. As Flex notes, Allianz could

---

[12] This appears to have been a reference to Rule 35.

have offered an expert opinion that performed a relative exposure analysis; supplemented the simplistic "per capita" analysis used by its allocation expert Marc Sherman; and/or instructed Sherman to conduct his analysis with fewer factual assumptions.  *See* Flex Opp'n at 20; Hr'g Tr. Cont. at 10; Award at 17–18.  Allianz did not take any of those steps.  Instead, as the Award recited, the "sole evidence" Allianz offered was Sherman's expert report and testimony.  Award at 17.  But Sherman's analysis was highly problematic.  He had never worked on a D&O matter involving allocation, read the governing policy, or reviewed any allocation correspondence (protected or not).  *Id.*  Instead, heeding Allianz's instructions, he assumed that liability should be allocated on a "per capita" basis, with Flex covering one third of the loss, corresponding to the two of the six defendants who were not insured by Allianz.  *Id.*  On cross-examination, Sherman "readily admitted" that this methodology was not based on insurance industry custom or practice or his own expertise, but merely Allianz's direction.  *Id.* at 17–18.  And Allianz, for its part, did not support the "counting hats" methodology it had directed Sherman to use.  *Id.* at 18.

Because Allianz was neither unfairly surprised nor denied an opportunity to present crucial evidence, this case is far afield from those on which it relies (*e.g.*, *Tempo Shain*, *Attia*, *Alfred Dunhill of London, Inc.*, and *Vernon-Hunt*) that vacated awards based on the unfair or abrupt exclusion of pivotal evidence.  Far more apposite is *LJL 33rd Street*, where the Second Circuit overturned a grant of vacatur, noting that the panel's adverse evidentiary ruling, although potentially harmful, had not been fundamentally unfair, because the party seeking vacatur could have offered alternative admissible evidence.  Allianz's ample advance notice that the admissibility of Flex's settlement communications was in dispute, and its decision nonetheless to bank heavily on such evidence, makes its bid for vacatur all the less persuasive.  *See, e.g.*, *LJL*

*33rd Street*, 725 F.3d at 187; *Kolel Beth Yechiel Mechil of Tartikov*, 729 F.3d at 107; *Rai*, 739 F. Supp. 2d at 374–75.

### 3.    Due Process Under Article V(1)(b) of the New York Convention

Allianz relatedly argues that the panel's consideration of settlement-related evidence for some purposes but not others violated due process under Article V(1)(b) of the New York Convention.  For much the same reasons that its argument based on section 10(a)(3) fails, this argument does, too.  As the arbitral record reflects, Allianz had sufficient opportunity to present its case, and the proceedings comported with due process.

Under Article V(1)(b), a court may refuse to recognize and enforce an arbitral award if the losing party was "unable to present his case."  The Second Circuit has held that this defense "essentially sanctions the application of the forum state's standards of due process," such that "due process rights are entitled to full force under the Convention as defenses to enforcement." *Iran Aircraft*, 980 F.2d at 145–46 (quoting *Parsons & Whittemore Overseas Co., Inc.*, 508 F.2d at 975–76).  The defense is "construed narrowly," and applies "only where enforcement would violate the forum state's most basic notions of morality and justice." *Parsons & Whittemore Overseas Co.*, 508 F.2d at 974.

In claiming a due process violation, Allianz likens this case to *Iran Aircraft*, in which the Second Circuit affirmed a district court's holding that it would offend due process to enforce an award issued by the Iran–United States Claims Tribunal, as established by the Algiers Accords. 980 F.2d at 142.  The dispute there was between certain Iranian parties and Avco, a U.S. aviation company, as to Avco's contractual obligations to repair and replace helicopter engines after the Iranian Revolution of 1978–79, and the Iranian parties' payments for such work. *Id.*  In a pre-hearing conference, the tribunal considered "whether voluminous and complicated data should

be presented through summaries . . . or extracts in order to save time and costs," and discouraged the submission of "kilos and kilos of invoices." *Id.* at 143.  In response to that admonition, Avco, in lieu of offering voluminous invoices, offered an affidavit from a public accounting firm, attesting that Avco's accounts receivable ledgers accurately reflected the sum of the individual invoices.  *Id.* at 144.  When the tribunal ultimately issued its award, however, it held that it could not "grant Avco's claim solely on the basis of an affidavit and a list of invoices," without seeing the invoices themselves.  *Id.*  Dissenting, a member accused the tribunal of having "misled" Avco as to the evidence it was required to submit, depriving it of "the ability to present its case" and noting that Avco had done "exactly what it previously was told to do by the Tribunal."  *Id.*  The Second Circuit adopted that critique, holding that, "by so misleading Avco, however unwittingly, the Tribunal denied Avco the opportunity to present its claim in a meaningful manner," giving rise to a due process violation under Article V(1)(b).  *Id.* at 146 (noting that the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" (quoting *Mathews*, 424 U.S. at 333)).

Allianz's analogy to *Iran Aircraft* is unconvincing.  There is no equivalent here to the blatant procedural wrong in that case—the panel's after-the-fact reversal of its directive to Avco to forego offering invoices, and denial of its claim on the basis of the absence of such proof.  The panel in this case never assured Allianz that Flex's settlement communications would be considered for purposes of determining the proper allocation.  On the contrary, as reflected above, Allianz was aware before and during the hearing that the admissibility of that evidence was disputed.  It accordingly repeatedly argued its position on the point.  Also unlike in *Iran Aircraft*, the panel here gave a reasoned explanation for its evidentiary ruling, anchoring such in the rules of evidence.

The other case authorities on which Allianz relies are likewise inapposite.  In *Hall v. Eastern Air Lines, Inc.*, the Fifth Circuit held that due process had been violated, warranting vacatur, where alibi evidence constituting "a complete defense" had been excluded.  511 F.2d 663, 664 (5th Cir. 1975).  The settlement communications here, in contrast, were far from dispositive—indeed, the panel stated that had it considered them, it would have accorded them little weight, and the exclusion of them was a defensible application of the rules of evidence.  And in *Alfred Dunhill of London, Inc.*, *supra*, one side had not received notice of the hearing and thus lacked an opportunity to present evidence.  *See* 1996 WL 640901, at *5–7.  Allianz, in contrast, had an ample chance to develop its case.  Its dubious decision to rely, as to the allocation methodology, almost exclusively on Sherman's expert analysis was not forced on it by the panel.

The Court accordingly denies Allianz's due process challenge under Article V(1)(b).  *See, e.g.*, *Parsons & Whittemore Overseas Co.*, 508 F.2d at 975–96 (no due process violation where tribunal refused to accommodate schedule of "allegedly key witness"); *Trividia Health, Inc. v. Nipro Corp.*, 2021 WL 5910437, at *3 (S.D.N.Y. Dec. 10, 2021) (same where panel did not receive "purportedly 'smoking gun' email" because it decided the case purely as a matter of law, having been advised by one party that "there were no factual disputes between the parties").

**B.     The Panel's Construction and Application of the Policy's "Best Efforts" Requirement**

Allianz next seeks vacatur on the ground that the panel erred in ruling that Flex had satisfied the policy's "best efforts" requirement.  Allianz Vacatur Br. at 30–31.  The panel held that "using best efforts means doing a 'reasonable job' to accomplish an allocation," and held that Flex had done so in its dealings with Allianz.  *Id.* at 31; Award at 15.  Allianz, however, characterizes Flex as not having made any efforts to reach an allocation (an inflexibility that

would make Flex's name an inaptronym). It argues that the panel's finding of best efforts was tantamount to a holding that "Flex's refusal to make any allocation offer to Allianz satisfied" that requirement. Allianz Vacatur Br. at 31 (emphasis omitted). That, in turn, Allianz claims, would read the best efforts requirement out of the contract and manifestly disregard New York law, which requires that a "fair meaning" be given to all of the language in a contract. *Id.* at 31 (citing *In re Viking Pump*, 27 N.Y.3d 244, 257 (2016)).

Flex counters by defending the panel's interpretation and application of the best efforts requirement. The panel's approach, it argues, accorded with New York law and the expert testimony adduced by both parties as to how that standard is understood in the insurance industry. Flex Opp'n at 25–29. Flex also disputes Allianz's factual premise that Flex did not make any allocation offers to Allianz. *Id.* at 26. It notes that the arbitral record reflects evidence of multiple compromise proposals by Flex to Allianz and that the panel cited these in its ruling. *Id.*

The Court again holds with Flex. In finding that Flex satisfied the policy's best efforts requirement, the panel did not manifestly disregard applicable law. To vacate an award on this ground requires finding "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co.*, 811 F.3d at 589. Vacatur for manifest disregard of the law is "a doctrine of last resort," applied only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Duferco Int'l Steel Trading*, 333 F.3d at 389.

Nothing of the sort occurred here. Siding with Allianz, the panel found the best efforts requirement "an integral part" of the policy. Award at 15. As to the construction of that

contractual term, the panel noted that, under New York law, "'fair meaning' needs to be given 'all of the language employed by the parties in the contract,'" *id.* (citing *Viking Pump*, 27 N.Y.3d at 257), and reviewed the parties' expert testimony as to the industry understanding of best efforts. Flex's expert had testified that it meant "doing a reasonable job to accomplish an allocation." *Id.* Allianz's expert had likewise testified that best efforts was "a very subjective standard" that "depend[ed] on specific facts." *Id.* But Allianz's expert went further, opining that industry customs dictated that "when an offer is accepted by the first carrier in the tower, that offer must be offered to the excess carriers." *Id.* The panel, however, rejected this view—and therefore did not require Flex to have extended lockstep offers to satisfy the best efforts requirement—because "neither [Allianz's expert] nor Allianz [had] offered any legal authority" to support it, and because that reading was "belied by the widely different allocation percentages" in Flex's settlements with the primary and other excess insurers. *Id.*

The panel acknowledged that Allianz's expert and its claims manager had each testified that best efforts required offering less than 100% allocation. *Id.* at 16. And it acknowledged that Flex, at one point, in July 2024, demanded that Allianz accept 100% allocation of the loss. *Id.* However, the panel also found, "[a]t various times after its interim deal with XL [the primary insurer], Flex [had] offered 80%, 75% and 65% allocations to settle."[13] *Id.* at 15–16. And, the panel found, Flex had "communicated fully" with Allianz as to key developments in the ATI action, as shown by "numerous emails and slide decks from [Flex's] trial counsel" that were received by Allianz. *Id.* at 16. The panel therefore found that Flex had "acted reasonably and

---

[13] As noted, the panel—although not relying on Flex's allocation offers to the insurers below Allianz as evidence of the value of Flex's claim, on the ground that these were protected settlement communications—found that Flex's communications *to Allianz* "support the view that Flex met the best efforts requirement." Award at 15–16.

met the best efforts requirement of [the policy] to try and determine a 'fair and proper allocation.'"  *Id.*

Far from refusing to apply or ignoring controlling law, the panel's decision correctly applied it.  Its construction gave "fair meaning" to the best efforts provision of the contract, including drawing upon credible testimony as to the industry understanding of that concept. Indeed, Allianz's post-hearing briefs accorded with the panel's construction of that term.  *See* Dkt. 17-20 at 21 ("Under New York law, the phrase 'best efforts' requires 'a party [to] use all reasonable means to achieve the contractual object at issue." (citation omitted)).  The panel reasonably applied that construction in finding Flex to have complied with its best efforts obligation.

In challenging the panel's holding, Allianz contends that the panel implicitly found Flex's July 2024 offer of 100% allocation to satisfy best efforts.  That mischaracterizes the panel's analysis, which was not pointillistically focused on that single offer, in isolation, as showing best efforts.  Its finding of best efforts instead was based on a holistic assessment of Flex's negotiations with Allianz.  *See* Award at 14–16.  The panel also took into account the various sub-100% allocations that Flex had proposed.  Allianz tellingly does not argue that Flex's overall sequence of proposed allocations, including those involving shared allocations, was inconsistent with best efforts.

And there is no basis to treat an iterative negotiation process as incompatible with best efforts, let alone to hold that the panel's finding of best efforts on the facts at hand manifestly disregarded law construing that contractual term.  *See Zurich Am. Ins. Co.*, 811 F.3d at 589.  The parties' agreement was not "well defined" or "explicit" as to the meaning of the term.  And the

law on that point did not sharply delineate it, either.  To the contrary, both sides' experts testified

that the "best efforts" standard is subjective, fact-bound, and malleable.

The panel thus did not fail or refuse to apply a clearly defined, governing legal principle.

*Duferco Int'l Steel Trading*, 333 F.3d at 389.  This ruling therefore does not present one of

"those exceedingly rare instances where some egregious impropriety on the part of the arbitrators

is apparent," warranting vacatur.  *Id.*; *see, e.g., id.* at 392–93 (confirming award where it "only

arguably conform[ed] to legal standards" and did not "intentionally def[y] the law"); *Zurich Am.*

*Ins. Co.*, 811 F.3d at 589 (same, where evidence "could have supported a contrary conclusion,

but that does not show that the panel majority manifestly disregarded the law").[14]

---

[14] In light of this ruling, the Court does not have occasion to resolve Flex's collateral motion to strike much of a transmittal declaration Allianz submitted in support of its motion to vacate. Dkt. 27 ("Flex Strike Br.") at 1.  The declaration was submitted by William J. Brennan, Allianz's lead counsel during the arbitration (and in this litigation).  *Id.*  Flex stipulates to the authenticity of nearly all the transcript excerpts and exhibits appended to the declaration, but argues that Brennan's commentary in it attempts to supplant "the actual arbitration record" by placing an improper "interpretative gloss" on these items, rather than merely authenticating them.  *Id.* at 1–2.  Flex notes, for example, that Brennan misleadingly implies that Flex had made only one allocation offer to Allianz (*i.e.*, of 100% allocation to Allianz), *id.* at 7; *see also* Flex Opp'n at 26, whereas the record noted by the panel documents other compromise offers by Flex, *see, e.g.*, Dkt. 36-8 (March 20, 2020 email to Allianz and other insurers, attaching slide deck "for our discussion on Friday" that proposed an 80% allocation).  Flex also argues that "almost all" of the statements by Brennan that it challenges are "irrelevant" to the dispute here.  Flex Strike Br. at 5 n.2.  Allianz opposes.  Dkt. 47-1 at 5.  It argues that the declaration was intended "to aid the Court by identifying and summarizing" relevant material from the voluminous record.  *Id.*

This collateral dust-up is of no moment here.  The Court has not considered Brennan's characterizations of the transcripts and other exhibits he attaches.  And, as a matter of law, his post-award commentary could not override the evidence admitted and considered by the panel. The Court, having not considered Brennan's commentary other than that identifying hearing transcripts and other exhibits, accordingly denies as moot Flex's motion to strike.  *Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 230 (D. Conn. 2005) (denying collateral motion to strike certain portions of affidavits as moot because the central controversy did not depend on such).

The Court relatedly denies as meritless Allianz's cursory motion for attorney's fees and costs associated with responding to Flex's motion to strike.  Although the Court did not have occasion to resolve the merits of Flex's motion to strike Brennan's commentary, that motion was not

### C.      The Panel's Application of the Relative Exposure Rule

Allianz next asserts that the panel, although recognizing that the insurer-friendly "relative exposure" rule governed how to allocate loss, in practice applied the *insured*-friendly "larger settlement" rule.  Allianz Vacatur Br. at 28–30.  Allianz argues that this was error, reflected a rogue decision by the panel to impose its own "sense of justice," and requires vacatur, both for manifest disregard of the law, and for exceeding its authority in violation of section 10(a)(4) of the FAA. *Id.*

Flex counters that the panel faithfully applied the governing relative exposure test.  It asserts that the panel, adhering to the burden-shifting approach required by that test, found that all of Flex's loss was appropriately allocated to the insurer because Allianz had failed to carry its evidentiary burden of demonstrating otherwise.  Flex Opp'n at 27–30.

Flex is correct.  Although some language in the award uses terminology from the larger settlement test, the award, fairly read, applied the governing test and did so reasonably.  Vacatur is not warranted, either for manifest disregard or under section 10(a)(4).

### 1.      The Panel Did Not Manifestly Disregard the Relative Exposure Rule, or Exceed its Powers Under Section 10(a)(4)

A court may vacate an arbitral award for manifest disregard of the law or the parties' agreement only if it "finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co.*, 811 F.3d at 589. Vacatur for manifest disregard is "exceedingly rare," and reserved for instances of "egregious impropriety" by the arbitrators. *Duferco Int'l Steel Trading*, 333 F.3d at 389.

---

frivolous. *See Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985).

As to vacatur under section 10(a)(4) of the FAA, "[i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A.*, 559 U.S. at 671. Where, the arbitrators are charged with interpreting a contract, their decision must stand if it "even arguably constru[ed] or appl[ied] the contract," "regardless of a court's view of its (de)merits." *Oxford Health Plans LLC*, 569 U.S. at 569. Unless the panel substituted its "own notions of economic justice" for the parties' agreement, its "construction holds, however good, bad, or ugly." *Id.* at 569, 573 (cleaned up).

The panel here correctly applied the governing standard: New York's relative exposure rule. Its analysis began by ruling—with Allianz and against Flex—that Delaware's larger settlement rule did not apply. Award at 10. As the Award explained, the New York and Delaware rules reflect different approaches to allocating responsibility for a settlement that resolves a mix of insured and uninsured claims and/or parties. New York's relative exposure rule apportions responsibility according to covered and uncovered loss, but requires the insurer to bear the burden of proving what amount of the settlement cost should be excluded from coverage. Award at 7–8 (citing *PepsiCo, Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 662 (S.D.N.Y. 1986), *overruled on other grounds by Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87 (2d Cir. 1996)). In contrast, under Delaware's insured-friendly larger settlement rule, the cost of settlement is fully recoverable unless the insurer can show that the liability for non-covered conduct increased its liability. *See RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 908 (Del. 2021); *see also* Award at 10.

The panel then applied the relative exposure rule. It found that Allianz had "not met its burden of proving what amount of the settlement should be excluded from coverage." Award at 17 (cleaned up). The panel so found based on its rejection of Allianz's sole evidence on this

point as unconvincing: the report and testimony by its expert, Marc Sherman. *Id.* As the panel

noted, and as reviewed above, Sherman had never: worked on a D&O matter involving

allocation; read the operative policy; reviewed or considered any allocation correspondence; or

considered any evaluation of the tower's potential exposure had the ATI action proceeded to

trial. *Id.* Instead, he had based his opinions on assumptions provided by Allianz, including that

liability should be allocated *per capita*. *Id.* As the panel noted, Sherman "simply took the

number of parties, namely six, and since four were covered persons, he allocated one-third of the

loss" to the uninsured entities. *Id.* Sherman, the panel noted, "readily admitted" at the hearing

that this *per capita* methodology was "not based on insurance industry custom and practice," or

his own experience. *Id.* at 17–18. And Allianz, for its part, did not cite any basis for having

instructed Sherman to use that methodology. *Id.* at 18. The panel accordingly rejected

Sherman's analysis, and, with that put to one side, found that Flex's 100% allocation to Allianz

was "uncontested" because Allianz had "failed to produce any credible evidence" to exclude any

of that loss from coverage. *Id.*

The panel's analysis, fairly read, thus represented a reasonable application of the relative

exposure rule. As the panel noted, under that rule, Allianz bore the burden of proving what part,

if any, of the loss should be excluded from coverage. But to do so, it relied exclusively on

Sherman's report, which contained an analysis so dubious that Allianz "tellingly" made "no

mention whatsoever" of it in its post-hearing briefs. *Id.*

Allianz's critique that the panel abandoned that rule misconstrues the panel's approach.

In arguing that the panel relied upon Delaware's larger settlement rule, Allianz seizes on

language elsewhere in the award. Allianz Vacatur Br. at 29. It notes the panel's statements that

Allianz had "failed to offer any persuasive evidence that [the two uninsured entities'] presence

increased the settlement," and that the presence of these entities otherwise did not appear to have "resulted in a larger settlement."  *Id.*

But Allianz takes these snippets out of context.  The paragraph in the award that immediately precedes these excerpts explicitly made clear that this analysis was *not* part of the panel's application of the relative exposure rule:

> *Allianz argues in the alternative that even if the Panel applies the larger settlement rule*, it should conclude that the presence of the two uninsured corporate defendants increased the amount of the settlement because the measure of damages for the ATI claim against the corporate defendants—unjust enrichment—exceeded the measure of damages that would have been available against the insured individual defendants had the corporate defendants not been named in the ATI Action.

Award at 14 (emphasis added).  The panel then concluded that, contrary to Allianz's argument under the larger settlement rule, the testimony indicated that "the presence of the two uninsured corporate defendants actually reduced rather than increased the quantum of the settlement."  *Id.* In sum, the panel held that the outcome would be the same under either the New York or the Delaware rule.  Its alternative discussion of how the Delaware would apply does not impeach its express statement that it was applying the New York rule, or its application of that rule.

The panel did not manifestly disregard the law or the parties' agreement.  *See, e.g.*, *Duferco Int'l Steel Trading*, 333 F.3d at 392–93; *Zurich Am. Ins. Co.*, 811 F.3d at 589.  Nor did it exceed its powers under section 10(a)(4) of the FAA.  It applied the governing law and the terms of the parties' agreement.  *See, e.g.*, *Stolt-Nielsen S.A.*, 559 U.S. at 671–72; *Oxford Health Plans LLC*, 569 U.S. at 569.  Allianz's disagreement with the panel's outcome does not justify vacating the award.

### D.    Allianz's Remaining Arguments

In fewer than two pages in its brief, Allianz makes two final arguments: that (1) the panel was not qualified; and (2) Flex's petition for confirmation is fatally deficient because it did not

attach a declaration.  Allianz Opp'n at 13–15, 23.  Allianz does not cite authority supporting either argument.  Each fails (and borders on frivolous).

### 1.    Qualification of the Panel

Allianz argues that the panel was not qualified.  See *id.* at 13–15 (citing Article V(1)(d) of the New York Convention).[15]  According to Allianz, the award's legal errors reflect that the panel lacked the requisite expertise.  *Id.*

That is wrong for multiple reasons.  The Court has rejected Allianz's argument that the panel committed legal error.  By experience and credentials, the panel was well-qualified, with decades of combined experience and extensive familiarity with insurance coverage issues (including D&O insurance in particular).  *See* Dkts. 40-9 (resume of arbitrator Levit), 40-10 (same of arbitrator Eiseman), 40-11 (same of arbitrator Matthews).  And Allianz waived any argument challenging the panel: at the outset of the arbitral process, it received the arbitrators' resumes and had, but forewent, an opportunity to strike them.  Dkts. 40-7 (April 18, 2023 letter enclosing list of potential arbitrators), 40-8 (enclosed list of arbitrators, noting "[e]ach side may strike the names of any arbitrators from the list").

### 2.    Lack of Declaration Attached to Flex's Initial Petition

In a single paragraph, Allianz asserts that Flex's petition to confirm should be denied as deficient for not attaching a supporting declaration.  Allianz Opp'n at 23.  It implies that supporting factual declarations are commonplace on summary judgment motions as a means to authenticate evidence.  *Id.*

---

[15] That article provides that a court "may" refuse to recognize and enforce an award if, *inter alia*, the arbitral authority has been shown not to be in accordance with the parties' agreement or the law of the country where it was seated.  New York Convention, Art. V(1)(d).

This argument is baseless. After filing its petition, Flex submitted a second declaration that authenticated all exhibits attached to the petition, as well as others. Dkt. 40 (second Phillips declaration). Allianz does not dispute the authenticity of any exhibit that Flex put before the Court. These substantially consist of exhibits and transcripts from the arbitral record, and similar materials from the ATI litigation that was the subject of the arbitration. And Allianz, in its own declaration, attested to the authenticity of the documents it attached, which significantly overlap with those that Flex offered. *See* Dkt. 17.

### E.    Flex's Motion for Attorney's Fees and Costs

Flex has also moved for attorney's fees and costs in connection with this litigation. Dkt. 1 (petition) at 6; Dkt. 18 (brief supporting same) at 9. Allianz opposes. Allianz Opp'n at 23. Neither party offered any support for its position.

As to fees, under the "American rule," attorney's fees in a federal action generally cannot be recovered by the prevailing party in the absence of statutory authority for that award. *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). No such statutory authority has been cited here. However, under a court's inherent equitable powers, attorney's fees may be awarded when opposing counsel acts in bad faith—for example, "when a challenger refuses to abide by an arbitrator's decision without justification." *Id.* (citing *Bell Prod. Engineers Ass'n v. Bell Helicopter Textron*, 688 F.2d 997, 999 (5th Cir. 1982)).

Two arguments tacked on to Allianz's brief verge on frivolous, as reviewed above. The same cannot be said, however, of Allianz's other, principal arguments. Although these proved non-meritorious, they were not in bad faith. The Court therefore denies Flex's motion for attorney's fees. *See, e.g.*, *BASF Wyandotte Corp.*, 774 F.2d at 47 (no attorney's fees due to

losing party's "justifiable basis" for litigation); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. TNS Mgmt. Servs., Inc.*, No. 13 Civ. 2716, 2014 WL 100008, at *4 (S.D.N.Y. Jan. 10, 2014) (same).

As to costs, Federal Rule of Civil Procedure 54 provides that, in the absence of contrary authority, costs "other than attorney's fees" should be awarded to the prevailing party. Fed. R. Civ. P. 54(d)(1). "[C]ourts routinely make awards for costs in confirmation proceedings." *TNS Mgmt. Servs., Inc.*, 2014 WL 100008, at *4 (cleaned up) (awarding costs where prevailing party provided specific figures in declaration, despite adversary's non-frivolous basis to oppose confirmation of arbitral award). The Court authorizes an award of costs. Within one week of this decision, Flex is to file a declaration chronicling the costs it claims to have incurred and attaching appropriate documentation. Within one week thereafter, Allianz is to file a declaration stating whether it opposes any of the cited costs, and if so, concretely on what basis.

### F.    The Parties' Respective Motions for Limited Sealing

Allianz and Flex have each moved to seal certain portions of their briefs, declarations, and exhibits on the grounds that they contain information previously designated as confidential and/or commercially sensitive information. Dkts. 15, 33–34. The parties publicly filed redacted versions of these materials. Dkts. 20–21, 35, 46. The Court finds sealing as to these narrowly tailored excerpts and exhibits warranted to enforce the parties' arbitration agreement, *see Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 71 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1011 (2024), and to protect commercially sensitive information, *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). The Court grants the parties' motions to seal.

## CONCLUSION

For the foregoing reasons, the Court grants Flex's petition and motion to confirm the award, and denies Allianz's cross-motion to vacate it. The amount due under the award is: $10,963,951; plus $391,998.80 in pre-judgment interest through January 21, 2025; plus interest at the New York statutory rate, from January 22, 2025 to the date that judgment is entered in this case.

Within one week of this decision, Flex will file, with the Court, a declaration describing the costs it incurred in connection with this case and attaching appropriate documentation. Within one week thereafter, Allianz will file a declaration stating either that it does not dispute any of the claimed costs, or, if it disputes any, stating concretely which and on what basis. The Court, by separate order, will promptly resolve any such disputes.

Within one week of the Court's forthcoming order as to costs, Flex will submit a proposed judgment, consistent with that order and this decision, to the Orders and Judgments Clerk of this Court.

The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: November 13, 2025
        New York, New York