UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FLEXTRONICS INTERNATIONAL, LTD.,

                   Petitioner,

vs.

ALLIANZ GLOBAL CORPORATE &
SPECIALTY SE,

                   Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CASE NO. 1:25-cv-001511

JUDGE PAUL A. ~~ENGLEMAYER~~

              ENGELMAYER

## ~~[PROPOSED]~~ FINAL ENTRY OF JUDGMENT GRANTING PETITIONER'S MOTION TO CONFIRM AND ENFORCE FINAL ARBITRATION AWARD

This matter is before the Court on Petitioner Flextronics International, LTD's ("Flex") Petition to Confirm and Enforce Final Arbitration Award ("Flex's Petition to Confirm") (Docs. 1, 18) and Respondent Allianz Global Corporate & Specialty SE's ("Allianz") Motion to Vacate Arbitration Award ("Allianz's Motion to Vacate") (Docs. 16, 20–21).

Having considered Flex's Petition to Confirm (including the Memorandum in Support) and Allianz's Motion to Vacate, the Court finds Flex's Petition to Confirm well taken, **GRANTS** Flex's Petition to Confirm, and **DENIES** Allianz's Motion to Vacate. The Court hereby confirms the final arbitration award issued by the American Arbitration Association—International Centre for Dispute Resolution in Case No. 01-23-0001-1264 dated January 21, 2025 attached to this order as **Exhibit A** in all respects.

    **IT IS HEREBY ORDERED**

    Flex is awarded the following amounts:

    (1) The Arbitration Award of $10,963,951.00;

    (2) $391,998.80 in pre-judgment interest through January 21, 2025; and

(3) interest at the New York statutory rate, from January 22, 2025 to the date that judgment

is entered in this case, which, as of December 16, 2025 is $918,898.57; and

(4) $805.00 for Flex's Court costs.

This Final Entry of Judgment adjudicates all the claims and all the parties' rights and

liabilities in this action.

Dated:  December 19, 2025
        New York, New York

_____
Honorable Judge Paul A. Engelmayer

# INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
# INTERNATIONAL ARBITRAL TRIBUNAL

**Flextronics International, Ltd.,**
      **Claimant,**

**vs.**

**Allianz Global Corporate &**
**Specialty SE,**
          **Respondent.**

**Case No. 01-23-0001-1264**

---

## FINAL AWARD

---

**WE, THE UNDERSIGNED ARBITRATORS,** having been designated in accordance with the 3 April 2016 arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the parties, do hereby issue this **FINAL AWARD** as follows:

### PROCEDURAL BACKGROUND

Claimant Flextronics International, Ltd. ("Flex") filed its Demand for Arbitration on 17 March 2023 against Respondents/Insurers AIG Europe Limited ("AIG"), Chubb Insurance Company of Europe SE ("Chubb") and Allianz Global Corporate & Specialty SE ("Allianz"). Each Respondent served its Answer on 4 May 2023. The Respondents each issued a $15 million

excess policy to Flex as part of a $130 million Directors and Officers ("D&O") insurance tower in which AXA XL Insurance Company S.E. ("XL") issued the $15 million primary layer. AIG was the first excess carrier in the tower; Chubb the second and Allianz the third. All three excess policies carried a $15 million limit and each followed the form of XL's policy. Unless otherwise indicated, reference to the Policy refers to XL's primary policy. This proceeding was administered under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") effective 1 September 2022.

The International Centre for Dispute Resolution ("ICDR"), a division of the AAA, formalized the appointment of the three Arbitrators on 16 May 2023 and there being no objections to their disclosures, their appointments were reaffirmed on 1 June 2023.

After the 7 June 2023 Preliminary Hearing, Procedural Order No. 1 was issued and subsequently revised on 3 July 2023. On 17 July 2023 the parties' Stipulated Protective Order and Confidentiality Agreement was signed and issued.

Although on 12 April 2023 the ICDR Administrative Review Council initially determined that the place of arbitration would be New York, N.Y, on 28 June 2023 Flex filed a Brief in Support of California as the place of the Final Hearing. After also considering the Respondents' Brief in Support of New York as the hearing locale, the Panel issued an order on 1 August 2023 holding that the San Francisco Bay Area would be the place of the evidentiary hearing.

On 7 July 2023, as provided in the Procedural Order, Flex served its Amended Statement of Claim. Allianz served its Response and Detailed Statement of Defenses on 4 August 2023.

In the period leading up to the evidentiary hearing, numerous matters came before the Panel in connection with the Respondents' efforts (i) to obtain documents subject to the Second Amended Stipulated Protective Order and Confidentiality Agreement issued by the U.S. District Court for the District of New Mexico in *Array Technologies, Inc. vs. Colin Mitchell et. al* ("ATI

Action") and (ii) to subpoena the four individual defendants in that lawsuit. Because none of these efforts ultimately were successful, there is no need to discuss them any further. In addition, as can be expected in a case of this kind, a variety of disputes were submitted to the Panel both with respect to document production and depositions. Because the Panel's rulings have no effect on this Award, no further discussion of them is warranted.

As discussed in greater detail below, the Panel granted Flex leave to file a R-34 Motion on the law governing whether intentional conduct, unjust enrichment and punitive damages are "covered claims". The Panel ruled on 8 July 2024 that it is obligated to apply Delaware law to determine whether intentional conduct, unjust enrichment and punitive damages constitute insurable "loss" under §3.42.

Also on 8 July 2024 the Panel denied Respondents' R-34 Motion contending that Flex could not establish an insurable loss because it lacked standing to assert claims under the policies at issue.

Prior to that on 18 June 2024 the Panel had denied Allianz's R-34 Request for Leave to File a Dispositive Motion on its "lack of consent" defense because of material fact issues. Thereafter on 11 July 2024 the Panel denied Allianz's R-34 Request to File a Dispositive Motion on Allocation Issues on the grounds that there were genuine issues of material fact regarding (i) whether Flex engaged in "best efforts" negotiations to reach a "fair and proper allocation" and (ii) whether Flex had admitted that a "fair and proper allocation" would not reach Allianz's layer.

On 2 July 2024 the Panel was informed that Flex had reached settlements with AIG and Chubb. Accordingly, prior to the merits hearing the case caption was revised to leave Allianz as the sole Respondent.

The evidentiary hearing was held in-person in San Francisco over seven days commencing 23 September and concluding 1 October 2024. Three witnesses testified virtually on the Zoom

platform. There is a 1621-page transcript of the hearing. There were over 300 Joint Exhibits as well as a handful of other exhibits.

In addition to pre-hearing briefs, the parties submitted two rounds of simultaneous post-hearing briefs. The hearing was closed on 16 December 2024 and by agreement of the parties the time in which to issue this Award was extended until 31 January 2025.

## SUMMARY OF CLAIMS AND DEFENSES

Flex commenced this arbitration against AIG, Chubb, and Allianz to recover the loss it incurred in defending and settling the ATI Action, minus its $250,000 retention and also minus the $15,000,000 limits of the primary XL policy. Flex's total loss is $███████, which is comprised of $███████ Flex paid to ATI and $███████ Flex incurred in defense costs. After factoring in the ███████ in settlement monies it received from XL, AIG and Chubb and its infill of $███████, Flex seeks to recover $10,963,951 from Allianz, together with pre-award interest.

Allianz asserts multiple defenses. First and foremost, it contends that (i) pursuant to §5.10, the Panel must allocate some percentage of the $███████ loss to the uninsured defendants in the ATI Action (Flex and NEXTracker) or to uninsured claims[1] and (ii) as such, Flex's recoverable loss under the Policy cannot exceed $45 million. More specifically, Allianz asserts that Flex itself, through its course of dealing with XL, AIG, and Chubb, established that its loss cannot be allocated 100% to the four insured parties in the ATI Action.

---

[1] . The issue of uninsured claims was resolved in favor of Flex in the Panel's 8 July 2024 Order.

4

Allianz also asserts that (i) Flex's alleged refusal to negotiate allocation with Allianz breached its "best efforts" obligation; (ii) Flex breached the Policy's consent to settle requirement; and (iii) Flex breached its duty of good faith and fair dealing.

Because Flex and Allianz have been unable to agree on a fair and proper allocation, the Panel is being asked to determine, as between them, the fair and proper allocation of *loss* covered under the Policy. After consideration of the unique facts and circumstances of the ATI Action, the evidence and proofs presented during the evidentiary hearing, and the applicable law, for the reasons set forth hereafter, the Panel determines that, with respect to Allianz, Flex is entitled to a 100% allocation pursuant to § 5.10 of the Policy.

## DISPOSITION OF THE ISSUES

Prior to the hearing the parties submitted their Statement of the Agreed Issues, which they then amplified in their own separate supplemental submissions. After two rounds of post-hearing briefs, the issues for decision have narrowed and are more clearly defined. Accordingly, we focus this Award primarily on the issues addressed in the parties' post-hearing briefs.

### A. Governing Law:

The parties' offer differing positions on governing law on allocation of loss under §5.10. Flex asserts we should hold New York requires application of the larger settlement rule. If not, then Delaware law should apply. Allianz argues New York law is controlling and the relative exposure rule must be applied.

Section 5.19 of the Policy has an unambiguous governing law provision--interpretation, construction and remedies upon breach "shall be determined by the laws of the State of New York." Section 5.11 muddies the waters a bit by stating that "arbitrators shall also give due

5

consideration to the general principles of laws of the State of New York in the construction or interpretation of the provisions of this policy."

New York law prohibits Flex from recovering punitive damages or compensatory damages for unjust enrichment or intentional conduct. Section 3.42(iii) of the Policy creates a possible exception, stating that "any applicable law [as defined therein] most favourable to the insurability of damages…shall apply." It further provides that Flex has the right to obtain a written legal opinion under another "applicable law," that permits the recovery of claims that are uninsurable in New York and, if Flex does so, the "insurers shall not challenge that determination." On 8 July 2024, we granted Flex's R-34 Motion and ruled that Delaware law applies to the insurability of punitive damages, intentional conduct and unjust enrichment. We did so on the basis that Flex had obtained the requisite legal opinion from Jennifer Wasson of the Delaware Bar.

However, we reject Flex's assertion (Flex's Post-Hearing Brief at 20-21) that if relative exposure is the law of New York when allocating loss in a D&O insurance policy, then the most favorable law provision can be utilized to apply Delaware's larger settlement rule. Even if everything else supported its position, this argument still fails because the only Delaware counsel opinion before us is Ms. Wasson's, which is devoid of any discussion of the larger settlement rule as to which she was not asked to opine. Accordingly, the Panel will apply New York law to determine the fair and proper allocation of loss under § 5.10.

### B. **Allocation:**

1. §5.10 Allocation

The pivotal Policy provision on which the outcome of this case turns is §5.10. It provides in pertinent part as follows:

"The *insurer* shall be liable only for *defence costs* or *loss* derived exclusively from a covered *claim* against an *insured person* or a covered *securities* claim against a company.

6

If either:

(i)     a *claim* (other than a securities claim) is made jointly against:

a) any *insured person*; and

b) any *company* or any other person or entity; or

(ii)    a *claim* involves both covered and uncovered matters or persons under this
        policy,

then the *insured* and the *insurer* shall use their best efforts to determine a fair and proper
allocation of *loss* covered under this policy."

Preliminarily, we agree as Allianz asserts quoting *In re Viking Pump, Inc.*, 27 NY3d 244,
257 (2016) that we must construe the Policy as a whole "in a way that affords a fair meaning to all
of the language employed by the parties and leaves no provision without force and effect."
However, we do not agree with Allianz that because Marsh prepared the policy (Tr. at 1061-62
and 1251), "it must be construed to favor the insurer." (Allianz's Post-Hearing Brief at 5). *Contra
proferentem* is inapplicable here as in New York it is "a matter of last resort after all aids to
construction have been employed without a satisfactory result." *Albany Sav. Bank, FSB v. Halpin*,
117 F.3d 669, 674 (2dCir. 1997).

In understanding the meaning and application of §5.10, it is helpful to consider the context
in which in 2016 it became part of the Policy. In this regard, there are several matters of particular
relevance.

First, approximately thirty years prior to the issuance of the Policy, *Pepsico, Inc v.
Continental Casualty Co.*, 640 F. Supp. 656 (S.D.N.Y. 1986) was decided. The Court applied
New York law to a D&O policy involving joint and several claims against directors and officers
and the company and its auditors as well as independent claims against the two latter entities.
Interpreting a policy that was silent on allocation the Court applied the relative exposure rule. It

7

held the parties must allocate settlement costs between covered and non-covered parties and the insurer "must accordingly bear the ultimate burden of proving what amount of the settlement cost should be excluded from the policy coverage." (*Id.* at 662).

Second, Allianz bid unsuccessfully against XL to write the primary layer using its policy form with a relative exposure provision. (JE 134 and 134.5). Despite having its policy form rejected, Allianz underwrote the third excess layer of the insurance tower, which followed the form of XL's primary policy.

Third, by 2016, as a result of a series of larger settlement rule cases, starting in 1990 with *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357 (7th Cir 1990), the principal D&O insurers, including Allianz, as confirmed by its expert witness Larry Goanos (Tr. at 1228 and 1251), all had standard policy forms with relative exposure language. They did so to avoid application of the larger settlement rule. However, XL did not utilize such a form for the Policy, which Marsh put together.

## 2. The Appropriate Allocation Rule to Apply

As noted above and confirmed by Flex' expert witness, Robert Horkovich (Tr. at 1110-1111), New York law governs whether we should apply the larger settlement rule. After *Pepsico* there was a 20 year hiatus before another New York allocation case was decided. *Clifford Chance LLP v. Indian Harbor Ins. Co.*, 14 Mis.3d 1209 (A) (Sup. Ct. N.Y. County 2006), *aff'd*, 41A. D. 3d. 214 (1st Dept. 2007).

*Clifford Chance* is a 2006 trial court decision, which was affirmed in a one paragraph decision by the Appellate Division. Unlike the Policy before us, which has no allocation methodology, the Clifford Chance policy, in addition to instructing the parties as here to use their best efforts to allocate Loss, goes on to provide that in doing so they "will take into account the

relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the Claim...." In *dictum* the Court discussed larger settlement rule cases such as *Nordstrom* and *Caterpillar* which had no allocation clauses and juxtaposed them to the policy at issue which had bargained for language setting forth the methodology for applying the relative exposure rule. In support of its adoption of the relative exposure rule, the Court cited *Pepsico* among other cases.

In its cryptic affirmance the Appellate Division held that "despite the joint and several liability of the insured and uninsured defendants," there was a "clear allocation provision in the policy" that required a "determination of the insured's and the uninsured's relative exposures in the litigation and the benefits received from the settlement...." (41 A.D. 3d 214).

The post-*Clifford Chance* New York D&O allocation cases have involved policies that either are silent on methodology, as is the case here, or contain express relative exposure language. However, none have larger settlement rule provisions. *Trustees of Princeton University v. Natl Union Fire Ins. Co.*, 15 Misc. 3d 1118(A) (Sup. Ct. N.Y. County 2007), *aff'd*, 52 A.D. 3d 247 (1st Dept. 2008); *Natl Union Fire Ins. Co. v. Ambassador Group, Inc.*, 157 A. D.293 (1st Dept 1990); *Women's Integrated Network, Inc. V. U.S. Specialty Ins. Co.*, No. 08 CIV. 10518, 2012 WL 130 70116 at *2 (S.D.N.Y., Oct. 26, 2012); *In re. Adelphia Communications Corp.*, 639 B.R. 657, 663 (S.D.N.Y. 2022); and *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, No. 14 CV-8002, 2015 WL 5440694 at *13 (S.D.N.Y., Sept. 9, 2015).

Although the Appellate Division in *Clifford Chance* described the policy's allocation provision as having the effect of a "partial exclusion", we are not convinced by Flex's argument that §5.10 is unenforceable because the relative exposure rule is not stated in "clear and unmistakable language." (Flex's Post-Hearing Brief at 13 and 15). Granted §5.10 does not mention

relative exposure *per se* nor does it provide a methodology for allocation, but we do not think it has to. It suffices by providing the parties a "best efforts" guidepost they are to utilize in an effort "to determine a fair and proper allocation of loss...." We do not think any more explicit language need be used to avoid running afoul of the "clear and unmistakable language" requirement of *Walker v. Erie Ins. Co.*, 210 A.D.3d 1375, 1377 (4th Dept. 2022). Support for our position can be found in *Pepsico*. There the policy at issue was silent on allocation. Nevertheless, the Court had no difficulty applying the relative exposure rule without any need for "clear and unmistakable language" spelling out the putative exclusion. We take the same position here.

For the reasons stated above, we are unwilling to permit Flex to invoke the more favorable law provision of §3.42(iii) of the Policy to take advantage of the Delaware Supreme Court's adoption of the larger settlement rule in *RSUI Indem. Co. v. Murdock*, 248 A.3d 887 (Del. 2021). Moreover, Allianz correctly points out the fallacy in Flex's position of using this section to apply Delaware's larger settlement rule. "If every primary Policy provision that limits coverage in any way triggers Section 3.42 (iii)'s special choice of law rule for uninsurability, then the exception would swallow the rule." (Allianz's Post-Hearing Brief at 4).

We are aware that *Pepsico* is a 1986 District Court case that was disapproved 10 years later by the Second Circuit but it was on other grounds (*Waltuch v. Conticommodity Servs. Inc.* 88F. 3d (2d Cir. 1996) 87 (2d Cir. 1996)), and the Court's decision to apply a relative exposure analysis appears to remain the prevailing law in New York. Further, there has been no decision since by a New York State or Federal Court suggesting adoption of the larger settlement rule. Therefore, we are compelled to be guided by the relative exposure rule in our analysis.

### 3. Allocation to Covered Loss

In a nutshell Allianz's position is that because the ATI Action is a "mixed claim" with four insured directors and officers and two uninsured corporate defendants, allocation is mandatory in which Allianz "splits cost" with Flex and NEXTracker. (Allianz's Post-Hearing Brief at 1 and 5). Both Allianz's expert, Larry Goanos, and Stuart Ping of Allianz testified they had never encountered a 100% allocation. (Tr. at 1214 and 1447)

Allianz argues that Flex's settlements with the three lower layers of insurance for less than 100% of their limits prevent the Panel from determining that the proper allocation of loss under the identical language of §5.10 can be 100% as to Allianz's fourth layer. This is a facially compelling argument. We have considered it carefully but reject it for the following reasons:

First, communications between Flex and its counsel and XL and its counsel relating to the initial allocation of responsibility for defense costs and thereafter the settlement with XL during the COVID Pandemic are protected as settlement communications. Accordingly, we cannot consider them as evidence adverse to Flex. We conclude that Flex and its counsel made clear these communications were in the course of settlement negotiations and Flex preserved its position that it was entitled to a 100% allocation of loss pursuant to § 5.10.

Nonetheless, part of Flex's burden in proving its claim against Allianz is to present proof that it exhausted the three lower layers of coverage or accepted an infill for amounts less than the total coverage from each of them. The Panel is aware that settlements were reached with XL, AIG, and Chubb and that in each, Flex accepted ███████████████████. Flex has thus infilled (abandoned its right to recover) the balance from each of these three carriers totaling $███████.

Allianz argues that this constitutes conclusive evidence of the course and conduct of the parties and requires us to conclude that the parties themselves interpreted §5.10 as requiring

11

allocation of some percentage of the loss to uncovered parties or uncovered loss under either the relative exposure analysis or the larger settlement rule. Allianz further argues that its position is consistent with industry practice which Mr. Goanos testified requires the same percentage allocation be offered to all carriers in a tower once it has been offered and accepted by any carrier lower in the tower because they all follow form and contain identical allocation language. (Tr. at 1275-76 and 1284).

Allianz's arguments are flawed because they ignore the fact that each insurer settled with Flex at a different time, with a different percentage allocation, and that the facts known by the parties at such times were different. Flex settled with XL when the ATI Action had been delayed by COVID. Flex decided to accept ████████ of the XL policy's $15 million and assume responsibility for advancing 100% of defense costs. At that time, AIG became the working level of coverage as the ATI Action languished during the Pandemic. In 2022, that changed and various developments in the ATI Action impacted the evaluation of the defendants' exposure.

On the eve of trial Flex settled for $████████. At that time, the dollar amount of the exposure of AIG, Chubb, and Allianz was fixed at the settlement amount plus unreimbursed defense costs. These facts relating to allocation under §5.10 differed significantly from those that existed when Flex and XL settled. After AIG, Chubb, and Allianz did not reach settlements with Flex, this arbitration was commenced. The facts relating to exposure allocation remained the same thereafter. However, Flex was then faced with three different carriers, each with different exposures dependent upon resolution of the claims against carriers lower in the tower.

This arbitration proceeded for months with all three excess carriers as Respondents. The Panel properly has no knowledge of what took place at any of the mediations between the parties. The Panel knows that prior to the final hearing (i) Flex settled with AIG and Chubb; (ii) Flex

accepted ███████████ of the $15 million coverage limits from both; (iii) AIG and Chubb each settled ██████████████ ; and (iv) as a result Flex negotiated and received ████████████████ in settlement from XL, AIG, and Chubb ██████████ all three policies had identical allocation language and $15 million limits.

The Panel finds that Flex and Allianz were engaged in a negotiation over the allocation of loss and each was free to change its respective position and offers without being bound by prior ones. Indeed, Flex reserved its rights in writing (*See eg,* Ex. 104.003, Benesch's James Thompson's 6 February 2022 letter and Ex. 97, Brian Ramm's 24 September 2020 letter where Flex maintained, as it has throughout this arbitration, that Allianz was legally responsible for 100% of the settlement monies it paid to ATI and for its unreimbursed defense costs).

In determining the fair and proper allocation of loss under §5.10 we cannot rely on the settlements Flex reached with the other carriers. Even if these settlements were to be considered, they are inconclusive as to what the fair and proper allocation of loss should be between Flex and Allianz. Rather, the Panel must look at the totality of the circumstances to determine the fair and proper allocation of loss.

The nature of the claims asserted in the ATI Action is relevant to our analysis. In its Amended Complaint (JE 272.05), ATI asserted all claims jointly and severally against all parties for their actionable collaborative, conspiratorial conduct as aiders and abettors of each other's wrongful conduct. Its first paragraph alleges "this case is about a conspiracy" among all six named defendants and consistent with that allegation, no stand-alone claims are asserted against any of them. The liability of Flex and NEXTracker was concurrent and coterminous with the conduct of Garcia, Shugar, Mitchell and Graybeal. Each of the six defendants had the same relative exposure. All six were on the hook for the same quantum of damages under both ATI's lost profits and

13

disgorgement of NEXTracker's profits theories. This is much different than the *Pepsico* fact pattern. Although in *Pepsico* there was joint and several liability, both the corporation and its auditors were alleged to be independently liable for their own separate, individual conduct.

Allianz argues in the alternative that even if the Panel applies the larger settlement rule, it should conclude that the presence of the two uninsured corporate defendants increased the amount of the settlement because the measure of damages for the ATI claim against the corporate defendants – unjust enrichment – exceeded the measure of damages that would have been available against the insured individual defendants had the corporate defendants not been named in the ATI Action. (Allianz's Reply Brief, at 10-11) However, unrebutted is the testimony of Frank Scherkenbach of Fish & Richardson ("F&R"). He has "no doubt" that ███ ██████████████

████████████████████████████████████████████████████

████████████████████████████. (Tr. at 242-244 and JE102). This supports the conclusion that the presence of the two uninsured corporate defendants actually reduced rather than increased the quantum of the settlement.

Because (i) ATI pursued all of its claims against all defendants jointly and severally under a conspiracy theory; (ii) Allianz failed to offer any persuasive evidence that Flex and NEXTracker's presence increased the settlement; and (iii) it does not appear that the presence of the uninsured corporate defendants resulted in a larger settlement, we conclude that 100% of the loss is covered under the Policy.

### 4. Best Efforts to Determine a Fair and Proper Allocation of Loss

We disagree with Flex that Allianz waived its right to assert a best efforts defense by not raising it until July 2024. (Flex's Post-Hearing Brief at 21). Best efforts are required by both parties based on the Policy language, but Flex has not shown it suffered any prejudice because the

14

defense was not formally raised until last summer. We further do not accept Flex's argument that "best efforts" is a condition precedent to coverage and *ergo* must be "expressed in unmistakable language." (*Id.* at 22). Although Flex correctly points out that §5.10 provides no consequences for failure to use "best efforts" (*ibid*), it is an integral part of the provision. Per *Viking Pump,* "fair meaning" needs to be given "all of the language employed by the parties in the contract...." (27 NY3d at 257).

We agree with Mr. Horkovich that using best efforts means doing a "reasonable job" to accomplish an allocation. (Tr. at 1023). Mr. Goanos is of the same view--"[i]t's a very subjective standard," (*Id.* at 1272). "It depends on specific facts." (*Id.* at 1202).

Although no case in New York or elsewhere has been brought to our attention that addresses the point, Mr. Goanos opined that custom and practice dictate that "when an offer is accepted by the first carrier in the tower, that offer must be offered to the excess carriers." (*Id.* at 1275-76). According to Mr. Goanos, disparate treatment is not allowed (*id.* at 1276), but, again, neither he nor Allianz offered any legal authority in support. Mr. Goanos attempted to buttress his equal treatment argument by pointing out that all members of the tower received a .65 Increased Limited Factor. (*Id.* at 1290). We find this unpersuasive. Delaware law does not govern here, but *RSUI* is instructive in not applying such equal treatment. Furthermore, in the case before us, treating all layers "equally and fairly" is belied by the widely different allocation percentages agreed to in the XL, AIG, and Chubb settlements.

As noted above, we are satisfied the various allocation proposals Flex made to the carriers below Allianz are protected by the settlement privilege. However, the nature of the communications from Flex to Allianz also support the view that Flex met the best efforts requirement of §5.10. At various times after its interim deal with XL to cover 80% of the defense

15

costs, Flex offered 80%, 75% and 65% allocations to settle. Mr. Goanos agreed that there are a variety of reasons why an insured or insurer might want to settle. (*Id.* at 1274-75). And Flex' Vice President of Litigation, Melissa Zujkowski, illustrated one as Flex's cash crunch brought on by COVID that drove the XL settlement. (*Id.* at 409). However, whatever the reasons, they are of no moment. The significant thing to us is Flex acted reasonably and met the best efforts requirement of §5.10 to try and determine a "fair and proper allocation." The proofs established that Flex communicated fully with Allianz regarding key developments in the ATI Action, as evidenced by the numerous emails and slide decks from trial counsel on which Allianz's Stuart Ping was copied. Mr. Ping testified that he reviewed deck slides showing that the potential liability at trial could consume all of Allianz's $15 million layer as well as much more. (*Id.* at 1463-65)

It is undisputed that the damages ATI sought could exhaust the limits of the entire tower (██████████████████████████████████████████████████████). (*Id.* at 214). ██████████████████████████████████ ██ ██████████████████████ ██████████████████████████████████. (*Id.* at 1465). Mr. Goanos testified about Allianz's best efforts that "I would never say to do what Allianz did here." "[T]hey could have done it better." (*Id.* at 1298). We agree.

In sum, Flex did not violate §5.10 when in July 2024 it demanded, as it had in prior allocation offers by its counsel, a 100% allocation of loss from Allianz. We so hold despite the testimony of Messrs. Goanos and Ping that best efforts requires a less than 100% allocation. (*Id.* at 1214 and 1447). Nor do we find probative the fact that in its 13 January 2023 Form S-1 filing with the SEC in connection with its spin-off from Flex (JE 252), NEXTracker stated the ATI settlement payment was "subject to partial coverage under the Flex insurance policy." This was written at a time when Flex's only settlement was with XL and significant uncertainty existed about what might be received from other carriers in the tower.

16

**5. Allianz Has Not Met Its Burden of Proving What Amount of the Settlement Should Be Excluded from Coverage**

Although *Pepsico* was a New York District Court decision that was overruled on other grounds and is not binding authority, we nonetheless conclude that its statement on New York law on the burden of proof is correct and we will follow it. There the Court stated several times that "the insurer bears the burden of proving that all or a portion of the total paid in settlement is excluded from the policy coverage." (646 F. Supp. at 666.)

The sole evidence Allianz proffered to meet its burden is the report of Marc Sherman (JE 307) as supplemented at the hearing by his testimony and Respondent's Ex 6. We find them unpersuasive and of little, if any, probative value. They do not move the needle in any meaningful way.

This case was only the second D&O matter on which Mr. Sherman worked and the prior one did not involve allocation. (Tr. at 1494-95). He never read the Policy. Counsel gave him only three documents to review and he did not consider any F & R analyses and evaluations of the tower's potential exposure if the ATI Action went to trial. Nor did he review or consider any allocation correspondence. (*Id*.at 1504).

The probative value of Mr. Sherman's report and testimony is further diminished because his opinions are wholly premised on thirteen assumptions provided by counsel. He had no opinion if they were correct. (*Id*. at 1505). Among other things, counsel told him to assume the liability of the defendants on any claim should be allocated on a *per capita* basis. (*Id.* at *1502-03; see also, id.* at 1486-87*)*. Mr. Sherman simply took the number of parties, namely six, and since four were covered persons, he allocated one-third of the loss to Flex and NEXTracker. (*Id.* at 1502-04). He readily admitted this *per capita* allocation methodology was not based on insurance industry

17

custom and practice or with his own prior D&O allocation experience, which was virtually nil. (*Id.* at 1505-06). Simply put, Mr. Sherman made no appreciable effort to analyze and evaluate the relative exposure of the six ATI defendants. The weight to be accorded his opinions was not helped by the fact that his use throughout his report of the phrase "relative financial benefits of the settlement for each of the ATI Action Defendants" was included per counsel's instructions. (*Id.* at 1506-07). And Allianz was unable to offer any legal support for his decision to use a *per capita* (or "counting hats") allocation method. Allianz has cited no caselaw for the proposition that when calculating an allocation of loss in a D&O policy using a relative exposure analysis, the default rule in New York is a *per capita* allocation.

In sum, Mr. Sherman's *ipse dixit* opinion is of no assistance and we find it unpersuasive *per se*. Tellingly, Allianz makes no mention whatsoever of Mr. Sherman's report or testimony in either of its post-hearing briefs. To its detriment, Allianz failed to produce any credible evidence as to how we should allocate the loss. It has not met its burden. Flex's 100% allocation of loss remains uncontested.

### C. Consent to Settle and Participation in Negotiation of Settlement:

Allianz argues that Flex has breached (i) §5.7 of the Policy by not being permitted "to associate effectively *** in the negotiation of [the] settlement" and (ii) and §5.9 due to its failure to obtain Allianz's prior written consent to the ATI settlement. According to Flex, Allianz waived consent or unreasonably withheld it. (Flex Post-Hearing Brief at 34-38).

Allianz is correct that consent to settle is a condition precedent to coverage and the burden rests with Flex to prove it has been satisfied. *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 NY3d 170, 176-78 (2008). At the same time, "an insurer has a duty to deal in good faith with its insured *** and may not arbitrarily withhold consent and at the same time argue that its insured has not

18

complied with a condition precedent..." *Matter of State Farm Mut. Auto Ins.Co. (Callisto)*, 255 A.D.2d 876 (4th Dept 1988).

The evidence is clear that Flex, F&R, Marsh and the Benesch law firm kept the tower timely apprised of developments in the ATI Action. On five days' notice the Court set a settlement conference for 15 July 2022, which was three days before the start of trial. ███████████████ ████████ ███████████████████████ ███████████████ It is undisputed that James Thompson of Benesch kept the tower, including Matthew Ferguson of Kennedys and Stuart Ping of Allianz, updated on the status of the settlement. (Tr. at 717-20). In a tower call on the 15th Mr. Thompson said the case likely would settle at around $██████ and he asked the carriers to waive consent with a full reservation of rights. *(Id. at 720-21).*

In the evening of 15 July 2022, the terms of the settlement—a $██████ payment by Flex and a public statement from NEXTracker about its conduct—were placed on the record. (JE 102). From that point onward, according to Mr. Scherkenbach, the material terms of the settlement were no longer subject to change. (Tr. at 243-47). On 18 July 2022, Mr. Thompson reported to the tower about the settlement. *(Id.* at 725-26). At his request, AIG and Chubb agreed to waive consent to the settlement. *(Id.* at 727). Although Mr. Goanos testified 95% of the time carriers waive consent *(id.* at 1215), Mr. Ferguson provided a "provisional waiver." This was described by both sides' experts as unusual. The waiver was conditional upon receipt of various documents from Mr. Thompson *(id.* at 734-36), although, according to Mr. Ferguson, no consent from Allianz was needed because the settlement did not reach its layer. *(Id.* at 1334 and 1337-38 and JE 264). Mr. Thompson provided some of the requested documents. He never received as he had requested from Mr. Ferguson a prioritized list of what was needed, but oddly Mr. Thompson never provided the Settlement Agreement as he had to both AIG and Chubb. Nonetheless, the evidence confirmed that Allianz issued its provisional waiver because Mr. Ferguson wanted to review a copy of the

19

signed ATI Settlement Agreement to make sure the insurers were released and independently to confirm that the other excess carriers, Chubb and AIG, had waived their objection to the settlement while reserving all other defenses. (*Id.* at 1343-46). In reviewing the terms of the Settlement Agreement and contemporaneous emails confirming the two other excess carriers had in fact waived their objection to the settlement, precisely as Mr. Thompson initially advised Mr. Ferguson, it is clear that Allianz's conditional waiver and refusal to consent to the ATI settlement arguments lack merit. Given that Allianz has not challenged the reasonableness of the quantum of the ATI settlement, it is readily apparent its §5.07 and §5.09 objections are not well-founded. Accordingly for the foregoing reasons, we hold that Allianz acted unreasonably in withholding its consent and there was no failure by Flex to cooperate with Allianz in connection with the settlement.

### D. Bad Faith and Sanctions:

Although §5.11 of the Policy prohibits an award of attorney's fees and costs, Allianz seeks such an award citing *Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86-89 (2d Cir. 2009). (Allianz's Post-Hearing Brief at 27-29). It also asserts that Flex's claim is frivolous and seeks sanctions because Flex breached its duty of good faith and fair dealing. (Allianz's Reply Brief at 14-15). Throughout this entire proceeding both Flex and Allianz have exhibited nothing but good faith in the way they have conducted themselves. In light of our disposition of Flex's claim, it is obvious there was no bad faith and no more need be said.

### E. Pre-Award Interest:

Flex seeks pre-award interest at the statutory rate in New York of 9% as mandated by CPLR §5001. Section 5001(b) provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed...." Citing *Olin Corp. v. One Beacon Am. Ins. Co.*, 864 F.3d 130, 152 (2d Cir. 2017), that in a "coverage dispute *** §5001(b) requires that

20

prejudgment interest be calculated from the date the insurer becomes obligated to indemnify the insured," Flex asserts that interest begins to run on 15 July 2022. This is the date of the ATI settlement "because that is the date the insureds became obligated to pay amounts penetrating Allianz's layer." (Flex's Post-Hearing Brief at 45 n. 12). We are constrained to disagree even though Allianz did not address the award of interest in its briefing.

Although the quantum due ATI was fixed on 15 July 2022 and Flex later paid it, Allianz's obligation to indemnify Flex did not become binding until the Chubb settlement was paid. There could be no attachment to Allianz's excess layer unless and until both the AIG and Chubb excess layers of $15 million had been exhausted. Therefore, pre-award interest shall accrue on the $10,963,951 awarded Flex from the date on which Flex received payment of $▮▮▮▮▮ from Chubb through the date of this Award.

## CONCLUSION

For the reasons set forth above, we **AWARD** as follows:

1. Within thirty days of the issuance of this Final Award, Allianz shall pay Flex the sum of $10,963,951, together with the pre-Award interest thereon at the New York statutory rate of 9% commencing on the date Chubb made its ▮▮▮▮▮ settlement payment to Flex through the date hereof.

2. The administrative fees of the ICDR totaling $37,580.00 and the compensation and expenses of the Arbitrators totaling $407,073.34 incurred for the entire arbitration proceedings from the commencement, shall be borne as incurred by the parties.

3. Except as specifically granted herein, no other relief is awarded as to any other claims and defenses. This Final Award is in full settlement of all claims and requests submitted in this Arbitration and it concludes these proceedings.

This Final Award may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

We hereby certify that, for the purpose of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in San Francisco, California, USA.

Dated: 21 January 2025

W. H. Levit, Jr.
Arbitrator, Panel Chair

Dated: 21 January 2025

Neal M. Eiseman
Arbitrator

Dated: 21 January 2025

Joseph M. Matthews
Arbitrator

22

State of Wisconsin
County of Milwaukee
USA

I, W.H. Levit, Jr, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our Final Award.

Dated: 21 January 2025

W.H. Levit, Jr.
Arbitrator, Panel Chair

State of Wisconsin          )
County of Milwaukee         )    SS:
USA                         )

RYAN HECKMAN
Notary Public
State of Wisconsin

On this 21st day of January 2025, before me personally came and appeared W.H. Levit, Jr. to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

Notary Public
Expires  1/23/2026

24

This Final Award may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

We hereby certify that, for the purpose of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in San Francisco, California, USA.

Dated: 21 January 2025

W.H. Levit, Jr.
Arbitrator, Panel Chair

Dated: 21 January 2025

Neal M. Eiseman
Arbitrator

Dated: 21 January 2025

_____

Joseph M. Matthews
Arbitrator

22

State of South Carolina
County of Beaufort
USA

I, Neal M. Eiseman, do hereby affirm upon my oath as Arbitrator that I am the individual described

in and who executed this instrument, which is our Final Award.

Dated: 21 January 2025

Neal M. Eiseman
Arbitrator

State of South Carolina    )
County of Beaufort         )    SS:
USA                        )

On this 21st day of January 2025, before me personally came and appeared Neal M. Eiseman, to

me known and known to me to be the individual described in and who executed the foregoing

instrument and he acknowledged to me that he executed the same.

Notary Public

JONATHAN Z. BETTS
Notary Public
State Of South Carolina
My Commission Expires July 31st 2034

23

This Final Award may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

We hereby certify that, for the purpose of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in San Francisco, California, USA.

Dated: 21 January 2025

W.H. Levit, Jr.
Arbitrator, Panel Chair

Dated: 21 January 2025

Neal M. Eiseman
Arbitrator

Dated: 21 January 2025

Joseph M. Matthews
Arbitrator

22

State of Florida
County of Dade
USA

I, Joseph M. Matthews, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our Final Award.

Dated: 21 January 2025

Joseph M. Matthews
Arbitrator

State of Florida    )
County of Dade    )    SS:
USA    )

On this 21st day of January 2025, before me personally came and appeared Joseph M. Matthews, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

Notary Public

BELKIS FERRER
Notary Public - State of Florida
Commission # HH 595526
My Comm. Expires Sep 19, 2028
Bonded through National Notary Assn.

25